Richard C. Whitlock, OSB 773884
Eric B. Mitton, OSB 065925
Of Attorneys for Defendant City of Medford
Medford City Attorney's Office
411 W. 8th Street, Room 260
Medford, OR 97501
(541) 774-2020
richard.whitlock@cityofmedford.org
eric.mitton@cityofmedford.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| ANDRE BILODEAU, ROBERT BESSY, AMBER MCNAB, AND GREG KILLINGSWORTH, individuals, on behalf of themselves and all others similarly situated; and DOES 1 through 100, | Case No. 21-CV-00766 ANSWER |
| Plaintiffs, | |
| v. | |
| CITY OF MEDFORD, MEDFORD, an incorporated Oregon city, | |
| Defendant. | |

As answer to Plaintiffs' Complaint, Defendant City of Medford, Oregon ("City") hereby admits, denies, and alleges as follows:

1.

As to Plaintiff's paragraph 3 on page 2, Defendant is without information sufficient to form a belief as to the Medford School District's current count of youth who are "homeless"

PAGE 1 – ANSWER

under the The McKinney-Vento Act definition, denies the applicability of that particular

definition to the case at bar, and alleges that the Medford School District 549C service area

boundaries are broader than Defendant's city limits and jurisdictional boundaries.

2.

As to Plaintiff's paragraph 4 on page 2, Defendant specifically denies the allegation that

the City has fought against warming shelters, and alleges that the City in 2019 adopted code

language allowing severe event shelters to exist in circumstances where building code, fire code,

and/or zoning code would otherwise prohibit congregate shelter.  Defendant participated in

discussions with community partners on a multi-partner approach to severe event shelters.

Defendant was involved in a multi-partner effort to convert the building that was holding the

Medford Senior Center into a warming and cooling shelter (including making Defendant's Santo

Center available as an alternative location for the Senior Center's programming); that effort was

successful, and the shelter opened its doors as a cooling shelter on June 26, 2021, and Council

will be considering financial support for the warming and cooling shelter in the near future.

3.

As to Plaintiff's paragraph 6 on page 3, Defendant specifically denies that its civil

exclusion ordinance "deprives many of social services" and alleges that the ordinance contains

specific exemptions for entering the exclusion area for "obtaining social, medical, or like

services," and other specific exemptions including, without limitation, "seeking employment or

performing work directly related to lawful employment; … attending a public meeting; …

attending a court hearing, meeting with an attorney or criminal justice personnel, or engaged in

any activity ordered by a court; … the act of filing an appeal to an exclusion notice issued under

this section; [and] attending religious services or otherwise exercising a constitutional right."

PAGE 2 – ANSWER

Defendant further denies that the civil exclusion ordinance addresses "minor wrongs" and alleges that the qualifying convictions set forth in the ordinance are designed "to protect the public from those whose illegal conduct poses a threat to the public health, safety, and welfare."  Defendant specifically denies any legal duty for "City Council…to secure funding for adequate affordable housing in the City," but regardless alleges that in 2018, the City adopted its Affordable Housing Construction Excise Tax which taxes market-rate housing to subsidize affordable housing development.  Defendant specifically denies the allegation that it has failed to take steps to create low-barrier emergency shelter, including that the Defendant provides real property at just $1 per year for Rogue Retreat's Hope Village; provided an $87,000 grant in 2019 to help convert Rogue Retreat's Kelly Shelter to a permanent shelter; has taken various actions to support the creation and repeated expansion of Rogue Retreat's Urban Campground; has facilitated the of the warming and cooling shelter housed in the Medford Senior Center facility.  Defendant specifically denies that the Urban Campground is the only low-barrier shelter option in the City. Defendant specifically denies that the Urban Campground is limited to 60 beds; on April 15, 2021, Council authorized an expansion to 125 tents or pallet homes.

4.

As to paragraph 7 on page 3, Defendant admits that use of an electrical outlet not intended for public use can result in theft-of-services charge.  Defendant admits that the Medford Municipal Court is not a court of record, as allowed by Oregon law.  Defendant specifically denies that there are no "pretrial…services to those with mental health issues or substance abuse issues."  Such defendants are frequently placed "on status," where if they comply with treatment obligations and participate in a case plan, they may receive dismissals or other favorable dispositions.  Furthermore, Defendant is currently exploring the establishment of a formal

PAGE 3 – ANSWER

restorative-justice-oriented Community Court, potentially to be cited at the Navigation Center, which is described in more detail in subparagraph M of Defendant's First Affirmative Defense. Defendant admits that the vast majority of Municipal Court cases are resolved through negotiated resolution, instead of trial or evidentiary hearing, which is true for Municipal Court defendants of all socioeconomic status.

5.

As to paragraph 4 on page 4, Defendant admits that this Court has jurisdiction over Section 1983 claims and that venue is proper in this Court.

6.

As to paragraph 5 on page 4, Defendant admits that Amber MacNab, Andre Bilodeau, Robert Bessy, and Greg Killingsworth are homeless residents of Medford, Oregon, but denies that they are similarly situated given the broad scope of Plaintiff's allegations in the Complaint.

7.

As to paragraph 7 on page 4, Defendant admits that Defendant's staff estimated the cost of responding to a public records request from the Law Office of Justin Rosas as costing $134,669, but denies that the public records request was limited to enforcement of prohibited camping or civil exclusion regarding unhoused individuals.  Defendant alleges that the request sought not only records from all enforcement of the civil exclusion ordinance for four years (against all individuals, not just homeless individuals), but also all records of all interactions at homeless camps (including interactions without any enforcement action and investigation of felony crimes, not just the specific ordinances at issue in this case); all emails sent or received by any City employee that mentioned in any way "Rogue Retreat," "the Gospel Mission," "Greenway cleanup," "shelter space," or other keywords (resulting in 14,966 potentially-

PAGE 4 – ANSWER

responsive emails on the City's email server that needed to be reviewed for responsiveness and privilege); and other records.

8.

As to paragraph 8 on page 5, Defendant admits that the City of Medford is a municipal corporation duly organized and existing under the laws of the state of Oregon.

9.

As to paragraph A.7 on page 5, Defendant admits that the demand for affordable in the City housing exceeds its supply, but denies that Defendant is responsible for that economic situation or that Defendant has any legal duty to secure necessary funding for adequate affordable housing in the City.  Defendant admits that the 2020 Jackson County Point-in-Time Count found 727 homeless individuals, but denies that those individuals were all found "on the street" (approximately 50% of that number are/were sheltered) and denies that all those individuals were found in the City of Medford (that was a County-wide count).  Defendant is without information sufficient to form a belief as to the Medford School District's Title IX-A (McKinney-Vento Act) estimates, but regardless, denies that the McKinney-Vento definition of homeless (including children who are living with family or friends who are not their legal guardian) is applicable to Plaintiff's claims, and alleges that the Medford School District 549C service area boundaries are broader than Defendant's city limits and jurisdictional boundaries.

10.

As to paragraph A.8 on page 5, Defendant denies that it lags behind comparable cities in Oregon as to low-barrier shelter options.  Defendant admits there is not currently a low-barrier shelter bed available for each and every unsheltered individual simultaneously in the City, but denies the implication that there are no shelter beds (low-barrier or otherwise) currently available

PAGE 5 – ANSWER

in the City.  Defendant is without information sufficient to form a belief as to phone calls that

Plaintiff's counsel has made to various shelters and thus must deny the same.  Defendant denies

that the Kelly Shelter is chronically full and denies that a 500-person wait list exists; Rogue

Retreat's Executive Director stated to the Mail Tribune on or around May 19, 2021: "I don't

know where the 500 number comes from" and "We have beds and sites open regularly, and we

fill from those who have contacted us."  Defendant admits there is not a program identical to the

White Bird Clinic's CAHOOTS program, and alleges that no community partner in Medford

currently has the facilities, ability, and willingness to perform identical services to those

performed by White Bird Clinic in Eugene, Oregon.  Defendant further alleges, though, that it is

participating in multi-partner convenings about how to create a similar program within

Jackson County.  Defendant admits Defendant has created a Livability Team whose role includes

linking unhoused individuals to appropriate resources and helping unhoused individuals find

housing, and admits that the Livability Team does enforce applicable state and local laws in

addition to engaging and linking individuals to resources.

11.

As to paragraph A.9 on page 6, Defendant admits that Gospel Rescue Mission routinely

has open spaces for adults but denies it is the only shelter in the City that routinely has open

spaces.

/ / /

/ / /

/ / /

PAGE 6 – ANSWER

12.

As to paragraph A.10 on page 6, Defendant admits that the Gospel Rescue Mission has promulgated rules for participants in its programs, as it is allowed to do, and is without information as to the exact wording of the current rules.

13.

As to paragraph A.11 on page 7, Defendant admits that the Gospel Rescue Mission does not qualify as a "low-barrier shelter" as that term is referenced and used in recent Ninth Circuit and Oregon District Court rulings.

14.

As to paragraph A.12 on page 7, Defendant admits that the Kelly Shelter is run by Rogue Retreat and that it is low barrier. Defendant specifically denies there are "essentially never openings" as per the statements of Rogue Retreat's Executive Director quoted above in the Answer's Paragraph 10.

15.

As to paragraph A.14 on pages 7-8, Defendant admits that the City passed a prohibited camping ordinance on April 2, 2021, Medford Municipal Code 5.257. Defendant admits that after publication of the *Blake v. Grants Pass* opinion of July 22, 2020, City staff acknowledged that the previous ordinance would need to change to comport with the new case law and publicly stated as such. Defendant specifically denies that the new ordinance "prohibits camping anywhere in the City of Medford with a tent-year round" and alleges that the ordinance has a general rule against tent camping on public property, and includes a number of specified exceptions, including organized-and-approved operations and various temporary authorizations. Defendant specifically denies that "the City of Medford, through its attorney, expressed that

PAGE 7 – ANSWER

people would be allowed to sleep only with bedrolls during the wet, cold Southern Oregon winter," and instead alleges that the ordinance on its face, and the City's statements about it in context, draw a distinction between organized, regulated camping and unregulated camping. Defendant admits that fire safety was an important and legitimate public interest that informed the time-place-manner regulations, but denies that the City "us[ed] terminology meant to instill fear." Defendant denies that sleeping in City parks is generally prohibited (sleeping in parks is now generally lawful even during hours of park closure), but admits there are specific limited prohibitions on sleeping (i.e., playgrounds, ballfields, Prescott Park, and "school parks" associated with schools). Defendant admits that the City generally took a shelter-in-place approach as recommended by health officials during the pandemic, and maintained that approach until after vaccinations were available for unhoused individuals. Defendant alleges that this temporary emergency measure was not intended to set permanent policy going forward about the purpose of the Bear Creek Greenway. Defendant denies that Defendant's civil exclusion ordinance generally excludes homeless individuals from downtown; Defendant specifically alleges that neither trespass nor prohibited camping are excludable offenses, and instead the ordinance has a specific list of excludable offenses including but not limited to assault, disorderly conduct, drug offenses, and drinking in public. Defendant also alleges that the ordinance contains specific exemptions for entering the exclusion area for "obtaining social, medical, or like services," and other specific exemptions including, without limitation, "seeking employment or performing work directly related to lawful employment; … attending a public meeting; … attending a court hearing, meeting with an attorney or criminal justice personnel, or engaged in any activity ordered by a court; … the act of filing an appeal to an exclusion notice issued under this section; [and] attending religious services or otherwise exercising a

PAGE 8 – ANSWER

constitutional right." Defendant specifically denies that the *de facto* result of the prohibited

camping ordinance is to make it unlawful to live "outside and unhoused" in Medford.

16.

As to paragraph A.15 on page 8, Defendant denies there is no public housing within the

City of Medford, and admits that Defendant is not the entity that operates such housing.

Defendant alleges that Housing Authority of Jackson County ("HAJC") operates approximately

20 properties within the City, and that Defendant provides substantial grant funding to HAJC,

including but not limited to $343,478 for the construction of Newbridge Place (which opened in

2019).  Defendant admits that HAJC describes projected wait times for the Housing Choice

Voucher as between 4-5 years, but denies that Defendant is responsible for that wait time.

17.

As to paragraph A.16 on page 8, Defendant admits that houses are currently selling

quickly and at high value.  Defendant denies that it is impossible to lawfully live in a vehicle

anywhere in the City, and alleges that Defendant has authorized vehicle camping associated with

certain nonprofits (MMC 5.556-5.558), in organized-and-approved operations such as Maslow

Project's 2020 operation on MURA-owned property, and RV camping in right-of-ways adjacent

to consenting property owners (pursuant to Executive Order 2020-03), but admits that Defendant

does not generally allow unregulated vehicle camping throughout the City.

18.

As to paragraphs B.17 through B.21 on page 9 (regarding Robert Bessy, spelled Bessey

in City records), Defendant admits that Bessy was on one occasion in the past two years cited for

theft-of-services, and alleges that charge was reduced to a non-criminal violation by the City

Prosecutor.  Defendant admits and alleges that the theft-of-services charge involved electricity

PAGE 9 – ANSWER

taken from a grey electrical box in the public parking lot across from the Library, denies that the electrical box was intended for recharging of consumer devices by individual members of the public (housed or unhoused), and further alleges that the box at issue has since been removed and thus may not be applicable to a Complaint seeking forward-looking injunctive relief. Defendant admits that Bessy received a 90-day civil exclusion from the downtown area, denies that such an exclusion prevents someone from working or seeking social services within the exclusion zone, and further alleges that Bessy did not appeal the exclusion or seek any variance from the Municipal Court.  Defendant denies that Bessy has been named a defendant in any other Municipal Court case, including non-criminal violations, within two years of this complaint being filed.

19.

As to paragraphs B.22 through B.24 on page 10 (regarding Greg Killingsworth), Defendant admits that Killingsworth was cited and released for trespassing under the 10th Street Bridge (see cases 19-21617 and 20-962) and for prohibited camping at or around that location under the previous prohibited camping ordinance (case 20-3342).  Defendant admits that Killingsworth was contacted at or around the 9th Street bridge for bicycle theft and was issued a civil exclusion notice based upon that theft (20-4249), was cited for theft II (theft of a shopping cart (19-17263), and was cited for "park after close" (19-18068), but denies any Municipal Court case in the past two years for trespass or prohibited camping at the 9th Street Bridge.

20.

As to paragraphs B.25 to B.35 on pages 10-11 (regarding Amber McNab, spelled MacNab in City records), as to her allegation of "been woken up and disturbed while sleeping on at least 500 occasions," Defendant is without information sufficient to form a belief as to the

PAGE 10 – ANSWER

events referred to, but alleges that she has been the subject of two Municipal Court cases in the

two years prior to this suit being filed.  On one occasion, MacNab was cited for smoking in a

park and for littering (case 19-22963).  On the other occasion MacNab was cited for prohibited

camping under the prior ordinance, before the *Blake v. Grants Pass* opinion was published (case

20-662).  Defendant has not located any citation for trespassing within two years of the filing of

this Complaint.  Defendant has not located any civil exclusion for MacNab within two years of

the filing of this Complaint, and denies that MacNab is "banned" from Alba Park or downtown.

21.

As to paragraphs B.36 to B.42 (regarding Andre Bilodeau), Defendant alleges that the

only Municipal Court case where Bilodeau has been named a defendant in the past two years was

a trespass case on private property, inside the store at Food 4 Less, initiated by a store employee.

Defendant denies any civil exclusion cases regarding Bilodeau in two years prior to this

complaint being filed.  As for Bilodeau "facing a possession of a controlled substance offense for

a minor amount of a controlled substance," Defendant admits that Bilodeau is currently facing a

felony heroin charge before the Jackson County Circuit Court after having been indicted by a

grand jury, but denies that that charge arose out of the City of Medford (the citation attached to

the grand jury indictment was signed in the City of Central Point by a CPPD officer).

22.

As to paragraph C.27 on page 13, Defendant admits that the City has held a number of

Resource Fairs to help connect service providers and houseless individuals.

23.

As to paragraph C.29 on page 13, Defendant specifically alleges that Defendant took

affirmative actions during the pandemic to create additional non-congregate options for homeless

PAGE 11 – ANSWER

individuals, including vehicle camping on MURA property and supporting and assisting in the creation of the Urban Campground.  Defendant further alleges that the City generally allowed individuals to shelter in place on the greenways, absent unusual circumstances, prior to May 1, 2021 (when vaccines became widely available and time-place-manner regulations, including fire season regulations for the greenways, began implementation).

24.

As for paragraph C.29 on page 14, Defendant specifically denies that Defendant has made it impossible to operate a warming or cooling shelter; this Answer's paragraph 2 is adopted as if set forth fully herein.

25.

As for paragraph C.30 on page 14, Defendant specifically denies that Defendant has failed to take action to support affordable housing development, and this Answer's paragraph 3 is adopted as if set forth fully herein.  Defendant admits that Deputy City Attorney Kevin McConnell previously looked into the possibility of taking away a bank's right of redemption and that Defendant did not move forward with the proposal, but specifically alleges that the constitutionality of such an act is undetermined, and that no city in Oregon, to the best of Defendant's knowledge, has passed such an ordinance.

26.

As to paragraph C.31 on page 14 ("Several elected officials have publicly stated their desire to drive homeless people from the City…"), Defendant is without information sufficient to form a belief as to what alleged statements, when, and by whom the Complaint refers to and thus denies the same.  Defendant alleges that Council's documented support for the myriad of City actions listed in the First Affirmative Defense affirmatively disproves such an intent.

PAGE 12 – ANSWER

27.

As to paragraph D.32 on page 14, Defendant admits that the Complaint accurately sets forth the ordinance's language.

28.

As to paragraph D.34 on page 17, Defendant admits that the Complaint accurately sets forth the ordinance's language.

29.

As to paragraph 35 on page 21, Defendant specifically denies that class certification is appropriate under Federal Rules of Civil Procedure, does not consent to class certification based on the face of the Complaint, and does not waive any objection or opposition to class certification should Plaintiffs move to certify a class.

30.

As to paragraph 36 on page 21, Defendant specifically denies that either the Jackson County point-in-time count or the Medford School District's McKinney-Vento Act calculation are appropriate definitions or criteria for any proposed class.

31.

As to paragraph 37 on page 21, Defendant specifically denies that common issues of fact and law exist, as demonstrated by the disparate allegations of the four Plaintiffs and the eleven declarations attached to the complaint (see response to the Complaint's paragraph 40, below).

32.

As to paragraph 38 on page 22, Defendant denies that common issues of law or fact predominate, or that the specific questions offered by Plaintiffs are legally or factually applicable to the specific circumstances presented here.

PAGE 13 – ANSWER

33.

As to paragraph 39 on page 22, Defendant specifically denies that the four Plaintiff's allegations are typical to the class, as shown by the variations between those four and the declarations attached to the complaint (see below).

34.

As to paragraph 40 on page 23, Defendant is without information sufficient to form a belief as to whether Plaintiffs will fairly and adequately protect the interests of any class and thus denies the same.  Plaintiff appears to adopt by reference eleven declarations that have been attached to the Complaint.  Defendant denies that these declarations are part of a pleading requiring a response, and objects to class certification in the case at bar, but without waiving that objection, Defendant alleges that the declarations do not support class certification for the following reasons:

A.     Sherry Herndon: Herndon alleges mistreatment by a hotel and/or private crisis center's staff.  Defendant or Medford Police are only mentioned in that an officer wanted to speak to her in the hospital after a drug overdose; there is no allegation of any Eighth Amendment claim against Defendant.

B.     Jacqueline Elgin: Elgin alleges that she was arrested for drinking in public and admits that she was drinking a beer near Alba Park at the time.  Defendant denies that drinking in crime is itself a misdemeanor (it is a violation and no arrest could have occurred unless there was another basis for arrest) but admits that Elgin has been repeatedly cited for drinking in public. Defendant admits that on one of these occasions, Elgin was arrested in Alba Park for violating a probation condition, specifically no alcohol use (MPD 19-12855).

PAGE 14 – ANSWER

C.    Tianna Carrier: Carrier makes allegations about an interaction with law enforcement in the City of Central Point, Oregon, approximately five years ago, where her property allegedly was taken and burned.  Defendant is without information sufficient to form a belief as to the truth of these allegations, but regardless submits that these allegations regarding the City of Central Point are irrelevant for an action against Defendant.

D.    Yolanda Caro-Quintero: Caro-Quintero complains about law enforcement's seizure of a propane tank from the greenway and alleges that law enforcement described it as stolen and that she disputed that fact.  Caro-Quintero alleges destruction of belongings without any dates or specifics.  Caro-Quintero alleges that law enforcement rev their engines late at night.  Defendant denies the first allegation (and denies that the first and third allegations constitute an Eighth Amendment claim) and Defendant is without information sufficient to form a belief as to the second allegation and third allegations and thus denies them as well.

E.    Robert Hopkins: Hopkins describes being cited and released for theft of a shopping cart.  Defendant denies that this constitutes an Eighth Amendment claim.  The declaration contains an unsworn narrative by James Yarbrough alleging where an officer retrieved a stolen shopping cart from Hopkins but provided Hopkins a big bag for the cans that Hopkins was storing in the stolen shopping cart.  Again, Defendant denies that this constitutes an Eighth Amendment claim.

F.    Kristan Hinkley: Hinkley describes mistreatment by a private citizen (being shot by paintballs) and alleges "lewd" comments by an officer or officers without any names or dates.  The declaration contains conclusory allegations that officers are "in everybody's business too much" and unsupported speculation that law enforcement has undermined her ability to get into an addiction treatment or a shelter.  Defendant is without information as to the assault by a

PAGE 15 – ANSWER

private citizen with paintballs and thus must deny the same, and denies the allegations against Defendant.

G.      Burton Moreno: Moreno alleges contacts with law enforcement related to drinking in public and civil exclusion.  Defendant admits such contacts with law enforcement, including but not limited to MPD 20-17672 (citation for drinking in public); MPD 21-8084 (disorderly conduct and civil exclusion, and Moreno was intoxicated); MPD 21-125 (trespassing and disorderly conduct; Moreno was intoxicated); and MPD 20-19865 (disorderly conduct for physical altercation with other individuals, trespass for violation of civil exclusion, and issuance of new civil exclusion; Moreno was intoxicated).  Defendant is without information sufficient to form a belief as to the allegation regarding accessing wi-fi at the Jackson County Library and thus denies the same.

H.      Damian Rankin: Rankin alleges interactions with law enforcement regarding drugs (including possession of "bubble," a street name for certain drug(s)), drug paraphernalia, and knives.   Defendant admits and alleges that Rankin has been charged for drug possession (including Muni Court Case Nos 21G05643 and 21G07306), smoking marijuana in public (MPD 21-2563), and for menacing with a knife (MPD 21-6251).  Defendant also admits destroying two marijuana pipes and some marijuana when Rankin was arrested for trespass and criminal mischief (for throwing a bag of feces at another individual, coating the floor of the elevator of the Evergreen Parking Garage) (MPD 20-19809).

I.      Larry Rogers: Rogers alleges that on one occasion, he was told to move when he was sleeping behind Jackson County Library property.  Defendant is without information sufficient to form a belief as to this allegation and thus denies the same.  Rogers alleges that shelters and urban campgrounds "are not safe for people" and Defendant denies that allegation.

PAGE 16 – ANSWER

J. Marie Whaley: Whaley alleges that she stayed at a room at the Redwood Inn and it was dirty; that is not an allegation against Defendant. Whaley alleges that she was later arrested at a Purple Parrot for an outstanding warrant on an armed robbery case. Defendant admits and alleges that Whaley was the subject of a Circuit Court proceeding for menacing with a knife (MPD 16-8009; Jackson County Circuit Court Case No. 16CR73607) and that a warrant had issued in that case; Whaley ultimately was convicted. Defendant denies that any of these allegations state a claim against Defendant. Whaley also alleges mistreatment at the Jackson County Jail; but that is not an allegation against Defendant. Whaley alleges that she called police about a crime committed against a third party and allegedly law enforcement took no enforcement action; Defendant is without information sufficient to form a belief about this allegation at this time and thus denies the same, and regardless denies that the allegation states a claim against Defendant City.

K. Lonnie Wycherly: Wycherly alleges that he was arrested for an outstanding warrant and was taken to the ground when Hawthorne Park was closed to the public on September 22, 2020. Defendant admits that Wycherly was arrested for an outstanding warrant (for failure to appear—trespass premises) and was charged with trespass (Hawthorne Park was closed to all members of the public on September 22, 2020), and resisting arrest. Defendant denies that Wycherly was voluntarily vacating the closed park when contacted and alleges that at least 30 minutes had passed between his first police contact and his arrest. Defendant admits that both Wycherly and Officer Bridges fell to the ground during the course of Wycherly's arrest. Wycherly also makes allegations against the "Medford Jail." Defendant specifically denies that it owns or operates a jail; the jail is owned and operated by Jackson County. Defendant

Medford City Attorney's Office
411 West 8th Street, Medford, OR 97501
(541) 774-2020

specifically alleges that Wycherly was convicted (via guilty plea) to charges arising out of September 22, 2020.

35.

As to paragraphs 41-43 on page 23, Defendant specifically denies that a class action is appropriate under these facts and objects to any attempt to certify class via pleading.

36.

As to paragraph 44 on page 23, Defendant admits that Plaintiffs' counsel contacted the City of Medford on May 6, 2021 to demand some of the relief outlined in the Complaint.

37.

As to paragraph 45 on page 23, Defendant admits that Plaintiffs' counsel sent a tort claim notice and spoliation letter on or around September 25, 2020 but denies it was on behalf of these Plaintiffs or that it addressed the new prohibited camping ordinance, which had not yet been drafted at that time. Defendant admits that Plaintiffs' counsel sent a public records request related to several matters on October 21, 2020, but denies that it addressed the new prohibited camping ordinance, which had not yet been drafted. Defendant is without information sufficient to form a belief as to whether Plaintiffs or Plaintiffs' counsel communicated directly to Defendant an intent to sue regarding the new prohibited camping ordinance on behalf of these Plaintiffs prior to May 6, 2021, and thus denies the same. Defendant admits that Plaintiffs' counsel held a press conference in Alba Park on or around April 1, 2021 but denies that constituted communication with Defendant.

38.

As to paragraph 46 (the first of two) on page 24, Defendant admits the dispute was not resolved prior to suit being filed, but Defendant specifically alleges that the City sought public

Medford City Attorney's Office
411 West 8th Street, Medford, OR 97501
(541) 774-2020

feedback extensively in February and March 2021 on the post-*Blake* time-place-manner ordinance, and ultimately modified the draft as a result of that feedback.

39.

As to paragraph 48 on page 24, Defendant admits that resting and sleeping are not voluntary conduct and specifically alleges that the new ordinance does not include a City-wide prohibition on resting or sleeping on public property.

40.

As to paragraph 56 on page 25, Defendant denies that civil exclusion and trespass laws are selectively enforced against homeless individuals; civil exclusion has also recently been a valuable enforcement tool regarding patrons of a downtown bar where many fights occurred, and trespass laws are used in many different situations where someone is on property without the property owner's permission.

41.

Defendant admits that the provisions of the new prohibited camping ordinance (the time-place-manner-restriction based ordinance) have not been enforced against individuals who are not homeless, but also alleges that since April 2, 2021, it has only led to three enforcement actions, and otherwise Defendant has achieved voluntary compliance with the time-place-manner restrictions.

DENIAL OF ALL OTHER ALLEGATIONS NOT ADMITTED

42.

Except as specifically admitted, Defendant denies each and every other allegation of Plaintiffs' Complaint for the reasons that they are not true, or that the allegations are improper opinions or conclusions of law, or that the allegations are the pleading of irrelevant allegations

PAGE 19 – ANSWER

and detailed pleading of specific evidentiary allegations which are not ultimate facts and not

allowed to be pled in a complaint pursuant to FRCP 8(A)(2), or for the reason that as of this date,

Defendant does not have sufficient information to form a belief as to the truth or falsity of the

allegations and, therefore, must deny them at this time.

FIRST AFFIRMATIVE DEFENSE

(Innovative Responses to Homelessness and Support for Social Services)

43.

Defendant does not admit that the *Blake* analysis should be as broad as that framed by

Plaintiff's complaint (encompassing affordable housing, public housing, etc).  Without waiving

that objection, the overarching allegation of Plaintiffs' complaint that Defendant is "trying to run

homeless people out of sight, out of view, out of town or into the jail" is affirmatively disproven

by the City's participation in multiple and varied innovative responses, including, but not limited

to, those alleged above and the following:

A.      Designating Hope Village as a transitional housing campground under

ORS 446.265 and citing Hope Village on City property for a cost of $1 per year, effectively

providing a financial subsidy;

B.      Testifying before the Oregon legislature in support of an amendment to

ORS 446.265 that lifted the State of Oregon's restriction on the number of parcels that each city

was allowed to designate as transitional housing campgrounds;

C.      In 2020, designating property at 711 Central Avenue owned by Medford Urban

Renewal Agency as a transitional housing campground under ORS 446.265 and authorizing

Maslow Project to operate a vehicle camping operation on that property;

PAGE 20 – ANSWER

D.      Facilitating the creation of the Urban Campground by designating property as a transitional housing campground under ORS 446.265, assisting in cleaning and preparation of the site, providing support through the Livability Team, and repeatedly authorizing the expansion of the operation, and providing monthly compensation to the property owner (with a funding source to be formally decided on July 15, 2021), which would effectively subsidize the Urban Campground's operation;

E.      Working with State Senator Golden to secure $1,000,000 in funding potentially to be used for securing a permanent location for the Urban Campground;

F.      Providing an $87,000 grant to the Kelly Shelter in 2019 to support its transformation to a permanent shelter;

G.      Creation of code language authorizing severe event shelters (including warming shelters) where congregate shelter would not be otherwise allowed, and subsequently dedicating substantial staff time from Building Safety, Fire, and Planning in the support of warming shelters;

H.      Working with community partners on the successful conversion of the property previously housing the Medford Senior Center into a warming and cooling shelter, including moving Senior Center programming to the City's Santo Center to make the Senior Center property near Hawthorne Park available for use as a warming and cooling shelter;

I.      In the wake of the Almeda Fire, issuing an executive order on September 11, 2020 allowing occupied RVs on or adjacent to residential lots with the property owner's permission (including on public right-of-way abutting the residence), and authorizing unorthodox-but-regulated RV parking sites such as the site used by Asante to house employees off of Barnett Road;

Medford City Attorney's Office
411 West 8th Street, Medford, OR 97501
(541) 774-2020

J.      Adding two voting members to the City's Community Services and Development Commission reserved for members who have experienced homelessness in the past or who are currently homeless, referred to as having "lived experience," to help ensure such voices are part of decision-making regarding City grants and policy recommendations to City Council.

K.      Creation of Medford Police Department's Livability Team, an innovative approach to law enforcement involving officers empowered to spend time and resources outside of the normal call-for-service framework, working with individuals experiencing homelessness, including linking individuals to needed social services and helping individuals find housing;

L.      Serving as a co-applicant with Rogue Retreat for Medford Project Turnkey, which will be used to convert the Redwood Inn into 47 units of emergency and transitional housing, with the assistance of $450,000 allocated in support by Medford Urban Renewal Agency and over $400,000 of Defendant's CDBG funding for ongoing operations;

M.      Supporting the creation of the Navigation Center (as described in HB 2006, a low-barrier emergency shelter that is open seven days per week and connects individuals and families with health services, permanent housing, and public benefits), including hosting convening of potential service providers to discuss the organization and operation of such a resource and securing a $2.5 million award from the State of Oregon for the purchase of a suitable property;

N.      Exploring the establishment of a formal restorative-justice-oriented Community Court, potentially to be cited at the Navigation Center;

O.      Providing Hearts with a Mission $150,000 in gap funding to complete the construction of a 12-bed homeless youth shelter;

PAGE 22 – ANSWER

P.      Providing Columbia Care Services $250,000 for a 16-unit permanent supportive housing for veterans, targeting unhoused or low-income veterans, at the Stewart Avenue Apartments;

Q.      Allocation of $50,000 to the Reunification Program, helping individuals experiencing homelessness who have family or similar networks willing and able to care for them successfully reach and reunite with those support networks;

R.      Providing $250,000 to Youth 71Five Ministries for the acquisition of a multi-use building for unhoused youth and young adults to live in a transitional housing environment while obtaining vocational training;

S.      Supporting the Continuum of Care, both through funding for the Continuum of Care Coordinator position and also through the City Manager's service on the Continuum of Care's Executive Committee since January 2018;

T.      Adopting an ordinance in 2019 allowing religious institutions and places of worship to permit vehicle camping in their parking lots;

U.      Providing $5,000 to Jackson County to provide meals from March 2020 to July 2020 for individuals sheltering in place along the Bear Creek Greenway;

V.      Allocation of up to $100,000 in 2021 to support Rogue Valley Transportation District in installing an "Indestructible Loo" vandalism-resistant public restroom to provide 24-hour restroom facilities in downtown Medford;

W.      Providing legal staff support for the joint legislative workgroup between Oregon Law Center and League of Oregon Cities that helped draft House Bill 3115 and testifying in support of that bill before the Oregon Legislature;

PAGE 23 – ANSWER

X.      Adopting and executing its Homeless System Action Plan, formalizing and organizing the City's efforts through five recommended goals and 32 actions to address homelessness in Medford.

## SECOND AFFIRMATIVE DEFENSE

### (Lawful Time-Place-Manner Restriction)

44.

The City's April 2021 prohibited camping ordinance is not a city-wide prohibition on sleeping outside and does not criminalize the status of homelessness, but instead is a set of limited and specific time, place, and manner restrictions addressing legitimate public interests, intended to comply with footnote 8 of *Martin v. Boise* and the conclusion of *Blake v. Grants Pass*.

## THIRD AFFIRMATIVE DEFENSE

### (Claim Preclusion)

45.

If the alleged class is certified as Plaintiffs request, the lawfulness of the City of Medford's civil exclusion ordinance has already been fully litigated by a member of that alleged class and resolved in the City's favor in *Richard Harris v. City of Medford*, Jackson County Circuit Court Case No. 17CV34435.

## FOURTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

46.

To the extent that Plaintiffs rely on incidents or allegations that occurred more than two years before suit is filed, such claims are barred by the applicable statute of limitations.

PAGE 24 – ANSWER

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Remedies)

### 47.

The City of Medford's civil exclusion ordinance allows anyone subject to a notice to appeal the issuance of the notice or seek variance from its effect from the Medford Municipal Court, and tolls enforcement of the exclusion until after resolution of the appeal.  Any Plaintiff who was subject to civil exclusion, and failed to appeal, did not exhaust available remedies.  Similarly, any individual who believes that theft, trespass, or other charges at issue in this case were improperly applied to their situation, but did not contest those charges in court, has failed to exhaust available remedies.

## SIXTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

### 48.

None of the Plaintiffs have been subject to enforcement action under the City's April 2, 2021 prohibited camping ordinance.  Indeed, since the ordinance's adoption and through July 13, 2021, only three individuals have been cited or arrested pursuant to the ordinance.  Otherwise, compliance (whether engagement with services, obtaining housing with friends or family, or relocation to a safer area) has been achieved through engagement and voluntary compliance.  In addition, as set forth above, many of the Plaintiffs have not been cited or arrested during the last two years under the civil exclusion or trespass ordinances.  As such, Plaintiffs lack standing for all or some of their claims.

/ / /

/ / /

PAGE 25 – ANSWER

### SEVENTH AFFIRMATIVE DEFENSE

#### (Qualified Immunity)

49.

Defendant's officers are protected by qualified immunity where actions were taken where the law was not well-settled at the time of the officer's actions, including but not limited to any actions taken prior to the *Blake v. Grants Pass* opinion that are alleged to be inconsistent with that opinion.

### EIGHTH AFFIRMATIVE DEFENSE

#### (*Monell* Doctrine)

50.

Defendant does not have any unlawful customs, practices or policies, and Defendant's liability may not be established through individual incidents or allegations not caused by an unlawful custom, practice, or policy.

### NINTH AFFIRMATIVE DEFENSE

#### (*Heck* Doctrine)

51.

Plaintiffs, or some of them, were convicted of crimes that have not been set aside or overturned on appeal such that any claims arising out of the conduct for which Plaintiffs were convicted are barred by the *Heck* doctrine.

/ / /

/ / /

/ / /

Medford City Attorney's Office
411 West 8th Street, Medford, OR 97501
(541) 774-2020

TENTH AFFIRMATIVE DEFENSE

(Laches)

52.

To the extent Plaintiffs are seeking to invoke an equitable remedy for conduct that occurred several years ago, Plaintiffs' remedy is barred by the doctrine of laches.

WHEREFORE, having fully answered Plaintiff's Complaint, the Defendant requests that judgment be entered in its favor dismissing Plaintiff's Complaint, that Defendant receive an award of its costs and disbursements incurred herein, and for such further relief as the Court may deem appropriate.  Although Section 1988 allows defendants in Section 1983 cases to seek an award of attorney fees, Defendant here is not seeking such a fee award.

DATED this 15th day of July, 2021.

/s/ Eric B. Mitton
Richard C. Whitlock, OSB No. 773884
Lead Attorney
Eric B. Mitton, OSB No. 065925
Of Attorneys for Defendant City of Medford
Medford City Attorney's Office
411 W. 8th Street, Room 260
Medford, OR 97501

PAGE 27 – ANSWER