**Justin N. Rosas**, OSB #076412
justin@justinrosas.com
110 West Eleventh Street
Medford, OR 97501
Phone (541) 245-9781
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **ANDRE BILODEAU, ROBERT BESSY, AMBER MCNAB AND GREG KILLINGSWORTH,** individuals, on behalf of themselves and all others similarly situated; and DOES 1 through 100<br><br>               Plaintiffs,<br><br>v.<br><br>**CITY OF MEDFORD**,<br><br>          Defendant. | Case No. 1:21-CV-00766<br><br>**MOTION FOR CLASS CERTIFICATION**<br><br>(Oral Argument Requested) |

**TABLE OF CONTENTS**

Page

LR 7-1 CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

II. FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

A.  Medford's Affordable Housing Crisis and Lack of Emergency Shelter. . . . . . . . . . . . . . 7

B.  Medford's Policy and Practice of Punishing and Criminalizing Homelessness . . . . . . . . . 8

C.  Plaintiffs' Request for Class Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

A. Plaintiffs Meet the Standards for Certification Under Rule 23(a). . . . . . . . . . . . . . . . . . . .12

       1. Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
       2. Commonality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       3. Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
       4. Adequacy of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

B. Plaintiffs Meet the Standards for Certification Under Rule 23(b)(2) . . . . . . . . . . . . . . . . . 19

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

**CASES**

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Baby Neal for amp; by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) ) . . . . . . . . . . . . . . . . . . .  19

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
11 *Califano v. Yamasaki*, 442 U.S. 682 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
.15

*Civil Rights Educ. Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91 (N.D. Cal. 2016) . . . . . 13

*Dominguez v. Schwarzenegger*, 270 F.R.D. 477 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . 15

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir 2011) . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996). . . . . . . . . . . . . . .12

*G.A. Enterprises, Inc. v. Leisure Living Communities, Inc.*, 517 F.2d 24 (1st Cir. 1975) . .
. . . . 18

*Gen. Tel. Co. v. EEOC*, 446 U.S. 318 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 16

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . .17

*In re Cooper Co. Inc. Sec. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . 12

*Jordan v. Cty. of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Lane v. Kitzhaber,* 283 F.R.D. 587 (D. Or. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) . . . . . . . . . . . . . . . . . 18

*Lynch v. Rank*, 604 F. Supp. 30 (N.D. Cal. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mazza v. Am. Honda Motor Co.*, Inc., 666 F.3d 581 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . .14

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365 (D. Or. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 17

*Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Sorenson v. Concannon*, 893 F. Supp 1469 (D. Or. 1994) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Staley v. Kitzhaber*, No. 3:00-cv-00078-ST, Doc. 31 (D. Or. 2000) . . . . . . . . . . . . . . 15, 17, 20
*Wal-Mart Stores, Inc v. Dukes*, 564 U.S. 338 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 14, 19

*Wang v. Chinese Daily News*, 737 F.3d 538 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATUTES**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## OTHER AUTHORITIES

1 William B. Rubenstein, Newberg on Class Actions (5th ed. 2011) . . . . . . . . . . . . . . . . . . . . . 13

2 William B. Rubenstein, Newberg on Class Actions (5th ed. 2011) ) . . . . . . . . . . . . . . . . . . . 19

5 James Wm. Moore et al., Moore's Federal Practice (3d ed. 2004) . . . . . . . . . . . . . . . . . . . . .13

## RULES

Fed. R. Civ. P. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6, 11, 12, 14, 16, 18, 19, 20

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. VIII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15
U.S. Const. Amend. XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

## ORDINANCES

MMC 5.256. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

MMC 5.257. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

MMC 5.258. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

MMC 5.296. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

MMC 5.557. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

## LR 7-1 CERTIFICATION

The undersigned counsel certifies that plaintiffs made a good faith effort through

telephonic and written correspondence with opposing counsel to resolve this matter and have

been unable to do so.

**MOTION**

Pursuant to Fed. R. Civ. P. 23, plaintiffs move for an order certifying a class defined as follows: all involuntarily homeless individuals living in Medford, Oregon[1].

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs challenge the web of ordinances, customs, policies and practices that, in combination, punish and criminalize the existence of homeless people in Medford. As set forth more fully in plaintiffs' Complaint (Dkt #1) and shortly in the plaintiffs' amended complaint once the conferral process on objections is over, defendant's customs, policies and practices, as applied to the proposed class, violate plaintiffs' constitutional rights to be free from excessive fines and free from cruel and unusual punishment, to due process of law, and to equal protection of the laws, secured by the Eighth and Fourteenth Amendments.

Plaintiffs Amber Macnab, Andre Bilodeau, Robert Bessy, Greg Killingsworth, Travis Greiner and Ronda Bjork are six of the hundreds of homeless people living in Medford[2]. They have sued Medford seeking prospective injunctive and declaratory relief pursuant to 42 USC § 1983, for themselves and on behalf of all similarly situated persons. The proposed class seeks to enjoin defendant from continuing its practices of punishing or

---

[1] This proposed class definition includes homeless individuals who sometimes sleep outside of city limits to avoid harassment and punishment by Defendant as addressed in this lawsuit.

[2] Travis Greiner and Ronda Bjork will be added in the Amended Complaint by stipulation.

threatening to punish them for sleeping or simply existing in Medford unless and until the City provides a lawful place for people to rest, sleep and find shelter.

The proposed class satisfies each of the requirements for class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).  Specifically:

1. The proposed class is numerous;

2. The members of the proposed class share the common questions regarding whether defendant's customs, policies and practices of punishing and criminalizing the existence of homeless people in Medford violates the United States Constitution;

3. The claims of the individual plaintiffs are typical of (in fact, identical to) the claims of the members of the proposed class, each of whom suffers from and is at risk from defendant's practices and treatment of homeless individuals in Medford;

4. There are no conflicts of interest between the individual plaintiffs and the members of the proposed class; the individual plaintiffs intend to litigate the case vigorously; and the plaintiffs have retained experienced and competent counsel to represent their interests and the interests of the class; and

5. Defendant's practice of punishing and criminalizing homelessness by issuing orders to move-along as well as threatened fines and citations and issuing fines and citations for illegal camping, illegal sleeping and criminal trespass when there is not adequate shelter space or affordable housing in Medford  is generally applicable to the individual plaintiffs and to all other members of the proposed class, such that the final injunctive and declaratory relief sought by plaintiffs is appropriate for the class as a whole.

For these reasons, plaintiffs respectfully request that the Court certify the class described above and appoint their chosen attorneys as counsel.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Medford's Affordable Housing Crisis and Lack of Emergency Shelter

Medford is in the midst of an affordable housing crisis. There is not nearly enough affordable housing for all of the low-income residents of Medford. In 2020, the Point-in-Time Count of homeless people in Jackson County found 727 individuals on the street and another 2300 individuals precariously housed for a total of 3000 people who are homeless or at immediate risk of homelessness. Hundreds of homeless people currently live in Medford. The majority of these people reside in Medford, the county's largest city. The Medford School District at last count has 1,270 homeless students enrolled, the second highest number in the State.[3]

Unlike many other comparably sized cities in Oregon, Medford has no permanent emergency shelter for homeless individuals. There is no place in Medford where people can simply show up and receive shelter during the day or night. Medford has only rarely and recently allowed warming centers in the cold and snowy winters or cooling centers in the hot and increasingly smoky summers.

Medford has little to no Public Housing. If a person is lucky enough to get a housing voucher after 4 years in Jackson County, they still have to find a place to use it and only about half of those people are successful. The utilization rate is low. In short, it is hard to get a housing voucher and if a person gets one, there are very few places to use it.

---

[3] https://www.oregon.gov/ode/schools-and-districts/grants/ESEA/McKinney-Vento/Documents/K-12%20Totals%20by%20District%20and%20Living%20Situation%2018-19.xlsx

**B. Medford's Policy and Practice of Punishing and Criminalizing Homelessness**

On a daily and nightly basis there are hundreds of involuntarily homeless people living outside in Medford. They are roused awake by officers of the Medford Police Department. They are moved along. They are told that they cannot sleep outside. They are given notices their property will be taken. They are criticized for their hygiene. They are checked for warrants. They are told they cannot sleep in their vehicles or park their vehicles anywhere in the city overnight. They are threatened with ticketing, fines and prosecution for existing outside in Medford. They are, in fact, ticketed, fined and prosecuted for camping, sleeping and trespass as is evidenced by the attached declarations.

Plaintiffs have alleged and, following discovery, will produce evidence on the merits showing that the City has customs, practices and policies aimed at forcing homeless people out of the City and encouraging them to move to Portland. These allegations include the following: The City of Medford has taken affirmative and intentional steps to remove homeless people from its borders. The City has made underpasses uninhabitable by fencing them and blocking them with boulders. The City has moved, removed or modified park benches so that people have little or no place in public to rest. The City has made it illegal for someone to cover their head with a tarp or tent while resting on a park bench to sleep. The City has not opened any permanent emergency shelter and has only had minimal warming and coolling shelters. The Medford City Council has voted against affordable housing projects that were proposed for development in the City, sometimes citing non-existent problems, like lack of parking, to explain their votes against affordable housing.

Counsel for plaintiffs reviewed citations and records produced to them by Defendants pursuant to a public records request. There were 2438 tickets written pursuant to these statutes within a five-year period. 2036 of those were for prohibited camping. Mr. Greiner and Ms. Bjork have recently been cited for prohibited camping. Of the 2438 tickets received and reviewed for violations of MMC 5.256, 5.257, 5.258, 5.296 and 5.557, almost all of them were issued to people who were homeless at the time of issuance. These tickets show that these ordinances are selectively enforced against homeless individuals. Also, the tickets were usually issued based on officer-initiated patrols, not based upon complaints from the public. Of the 2036 prohibited camping tickets issued pursuant to MMC 5.257, nearly all were officer initiated. The City also issued 1396 exclusions in that time frame from city property and the greenway. Almost all of these were issued and they were, almost entirely, officer-initiated exclusions. They have arrested or cited people for violating their exclusion zone ordinance 174 times. The City's Municipal Court and City's Attorneys have not complied with their obligations under the RPC's to help pro se litigants through the system as pro se litigants are never provided discovery and are routinely dismissed and yelled at for things as simple as bringing up their service to the community.

**C.  Plaintiffs' Request for Class Relief**

Plaintiffs and the class they seek to represent bring this lawsuit to compel defendant to stop its campaign to drive homeless people out of the City.   Plaintiffs and the proposed class do not seek retrospective relief or re-adjudication of their past convictions or waiver of associated fines and fees. The relief sought is narrow.  Plaintiffs seek: an injunction on enforcement of MMC 5.256 (the "civil" exclusion zone), MMC 5.257 (the anti-sleeping and camping ordinance), MMC 5.557, and the theft of services laws as applied to outdoor charging of cell

phones and criminal trespass laws regarding city property, as well as move-along orders issued by police against homeless individuals in Medford who are engaged in the life sustaining activities of resting, sleeping or seeking shelter from the elements, unless and until Medford provides a place where plaintiffs can lawfully engage in necessary life-sustaining activities without requiring them to engage in religious services, be subject to search and seizure or have a curfew.  This relief is required because defendant's current custom, policy, and practice regarding involuntarily homeless individuals punishes people for engaging in innocent, life sustaining activities, in violation of the Eighth and Fourteenth Amendments.

Plaintiffs' complaint seeks declaratory and injunctive relief based on the following claims:

1). That the City's enforcement of the anti-sleeping ordinance, the anti-camping ordinances, the exclusion zone ordinance  and criminal trespass laws, as applied to the homeless individuals, violates the Eighth Amendment proscription against excessive fines and cruel and unusual punishment by harming plaintiffs and the class they seek to represent with punitive fines and criminal penalties for engaging in innocent, involuntary, life-sustaining activity, thus effectively criminalizing their homeless status;

2).  That the City's selective enforcement of anti-camping and anti-sleeping ordinances and criminal trespass laws violate the Equal Protection clause of the Fourteenth Amendment of the U.S. Constitution;

3). That the City's conduct and enforcement of the camping ordinances, the sleeping ordinance, the exclusion zone ordinance and criminal trespass laws, violate plaintiffs' fundamental rights and the fundamental rights of the class they seek to represent to move about freely and engage in harmless life-sustaining activities such as resting, sleeping and attempting to

stay warm, in violation of the Due Process clause of the Fourteenth Amendment to the U.S. Constitution; and

4).   That the City's two anti-camping ordinances do not provide constitutionally sufficient notice prior to depriving plaintiffs and the class they seek to represent of property and liberty interests, such that a reasonable person in Medford would understand what conduct is prohibited, in violation of the Fourteenth Amendment. Likewise, these ordinances do not provide law enforcement personnel with adequate direction as to what conduct is prohibited.

## III. ARGUMENT

Plaintiffs seek certification of a class consisting of all involuntarily homeless individuals living in Medford.  In order for certification of this class to be appropriate, the action first must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a):

(1) the class is so numerous that joinder is impracticable (numerosity);

(2) there are questions of law or fact common to the class (commonality);

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and

(4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

In addition, a proposed class action must fall within one of the categories of Fed. R. Civ. P. 23(b).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  Here, the individual plaintiffs seek certification pursuant to Fed. R. Civ. P. 23(b)(2), which requires that defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole…."        The Court must determine whether to certify this case as a class action "[a]t an early practicable

time…." Fed. R. Civ. P. 23(c)(1)(A). When considering a motion for class certification, the

Court must perform "a rigorous analysis [to ensure] that the prerequisites of

Rule 23(a) have been satisfied [.]" *Lane v. Kitzhaber*, 283 F.R.D. 587, 589 (D. Or. 2012), *citing*

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011), *quoting Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 351 (2011). In recognition of plaintiffs' limited access to proof at

early stages of a proceeding, however, the Ninth Circuit has cautioned that the "rigorous

analysis" requirement does not mean that the Court should conduct a "mini-trial," and that the

proof presented in support of class certification need not be admissible evidence. *See Sali v.*

*Corona Reg'l Med. Ctr.*, 889 F.3d 623, 631 (9th Cir. 2018). In evaluating plaintiffs' motion for

class certification, this Court need only consider the complaint and "material sufficient to form a

reasonable judgment on each [Rule 23(a)] requirement . . . ." *Blackie v. Barrack*, 524 F.2d 891,

901 (9th Cir. 1975). Holding plaintiffs to the evidentiary standards that will apply at trial risks

terminating important class actions before a putative class may gather crucial admissible

evidence. *Sali*, 889 F.3d at 633.

    As shown below, the proposed class here satisfies all the requirements of both Fed. R.

Civ. P. 23(a) and 23(b)(2), and the class certification motion should be granted.

## A. Plaintiffs Meet the Standards for Certification under Rule 23(a)

    1. Numerosity

    Federal Rule of Civil Procedure 23(a)(1) requires a showing that the class is so numerous

that joinder of all members is impracticable. The Supreme Court also explained that the

numerosity requirement does not require a specific number of class members. *See Gen. Tel. Co.*

*v. EEOC*, 446 U.S. 318, 329 (1980) ("The numerosity requirement requires examination of the

specific facts of each case and imposes no absolute limitations."). "Plaintiffs need not be able to

identify all Class Members, so long as there are enough to make joinder impracticable."
*Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996). Most courts, including the Ninth Circuit, presume numerosity where the putative class contains forty or more members. *See, e.g., In re Cooper Co. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009); see *also Jordan v. Cty. of Los Angeles*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982); s*ee* 1 Newberg on Class Actions, § 3:12 (5th ed. 2011) (As a general guideline a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.); 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[1][b] (3d ed. 2004). The District of Oregon has held that approximately forty members is generally regarded as making joinder impracticable. *See, e.g., Oregon Laborers-Employers Health & Welfare Trust Fund v. Phillip Morris, Inc.*, 188 F.R.D. 365, 372 (D. Or. 1998).

Plaintiffs here do not need to identify a precise number of class members in order to be granted class certification. "Where a plaintiff seeks 'only injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on reasonable inferences arising from plaintiffs' other evidence that the number of unknown and future members is sufficient to make joinder impracticable.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017), *quoting Civil Rights Educ. Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017). Similarly, "a court may draw a reasonable inference of class size from the facts before it." *Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *opinion amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985).

Here, the proposed class consists of all involuntarily homeless individuals living in Medford, and those who would be living in Medford but for defendant's unconstitutional conduct. The most recent "point in time" count in Jackson County found 727 individuals on the

street and another 2300 individuals precariously housed for a total of 3000 people who are homeless or at immediate risk of homelessness. Hundreds of these people live in Medford. Last year, Medford School District reported 1270 homeless youth enrolled in the District. It would be impracticable to join every one of these homeless individuals living in Medford in this litigation. Plaintiffs have therefore met the numerosity requirement for class certification.

## 2. **Commonality**

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that the proposed class have at least one common factual or legal issue, the resolution of which will affect all or a significant number of putative class members. The requirements of Rule 23(a)(2) have "been construed permissively," and all questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 980, quoting *Hanlon*, 150 F.3d at 1020. As long as there is a single common question, a proposed class can satisfy the commonality requirement in Rule 23(a)(2). *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), *citing Wang v. Chinese Daily News*, 737 F.3d 538 (9th Cir. 2013), quoting *Wal-Mart,* 564 U.S. at 338*; see also Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 589 (9th Cir. 2012) (noting that commonality only requires a single significant question of law or fact).

To satisfy the commonality requirement, the named plaintiffs must demonstrate that class members suffered "the same injury" and that the plaintiffs' claims depend on a common contention "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350 (certification depends on "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the

litigation"). Only where there is not a single common question of fact or law should class certification be denied for lack of commonality. *Id* at 359.

The commonality requirement in FRCP 23(a)(2) has been construed "permissively" by courts in the Ninth Circuit. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citing *Hanlon*, 150 F.3d at 1019). Although the facts and specific circumstances of plaintiffs may vary, if they share the basic legal issue or ultimate question of law, they share commonality as a class. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. The requirement of commonality will be satisfied where "the lawsuit challenges a system-wide practice or policy that affects all of the putative members." *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 485 (N.D. Cal. 2010). For example, in a case where Oregonians with developmental disabilities were not provided a full range of community based services, the Court nonetheless found a core of commonality, despite the fact that their disabilities and needs for community based services varied from person to person. *Staley v. Kitzhaber*, No. 3:00-cv-00078-ST, Dkt. #31, Order of Oct. 30, 2000, at 5.

In this case, plaintiffs satisfy the commonality requirement. They seek redress for a common injury facing every involuntarily homeless person in Medford - defendant's custom, pattern and practice of criminalizing innocent, life-sustaining behavior such as resting, sleeping and staying warm. Variation in the ancillary details of the class members' cases is insufficient to defeat certification as long as "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). That is precisely the case here.

Plaintiffs' claims share several central questions, including: (1) whether Medford's custom, pattern and practice of enforcing anti-camping and anti-sleeping ordinances and criminal

trespass laws, and imposing associated fines and fees against involuntarily homeless individuals violates the Eighth Amendment of the Constitution; (2) whether defendant's selective enforcement of anti-camping and anti-sleeping ordinances, exclusion zone ordinances, theft of services and criminal trespass laws violate the Equal Protection clause of the Fourteenth Amendment of the U.S. Constitution; (3) whether Defendant's conduct and enforcement of the camping ordinances, the sleeping ordinance, the exclusion zone, the theft of services law and criminal trespass laws violate the fundamental right of the plaintiffs to move about freely and engage in harmless life-sustaining activities such as resting, sleeping and attempting to stay warm, in violation of the Due Process clause of the Fourteenth Amendment to the U.S. Constitution; and (4) whether the City of Medford's anti-camping ordinances provide constitutionally sufficient notice prior to depriving plaintiffs of their liberty and property interests in moving freely through Medford, resting, sleeping and seeking shelter from the elements, such that a reasonable homeless person in Medford would understand what conduct is prohibited. The variations in circumstances of the putative class members are irrelevant to the constitutional rights that plaintiffs assert in this case. Each plaintiff and putative class member is subject to exactly the same procedural scheme and pattern of action by Medford. The answers to the common contentions in this case will resolve the entire case for all class members. Because the basic constitutional injuries complained of here are common throughout the proposed class, as are the questions of law and fact underlying that injury, the commonality requirement of Rule 23(a) is met.

3. **Typicality**

The claims of the named plaintiffs who represent the class must be typical of the class claims. Fed. R. Civ. P. 23(a)(3). The typicality standard is also "permissive" in that the claims

of the individual plaintiffs are "typical" if "they are reasonably co-extensive with those of absent class members; [the claims] need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same of similar injury, whether the action is based on conduct which is not unique to the individual plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted); *see also Rodriguez*, 591 F.3d at 1124 (9th Cir. 2010) (typicality satisfied because, "though Petitioner and some of the other members of the proposed class are detained under different statutes and are at different points in the remand process . . . they . . . raise similar constitutionally-based arguments and are alleged victims of the same practice of prolonged detention while in immigration proceedings"); *Staley*, No. 3:00-cv-00078-ST, Doc. 31, at 7 (plaintiffs alleging systemic violations of the Social Security Act, ADA, Rehabilitation Act, and Due Process Clause of the United State Constitution "easily" met the typicality requirement by showing that they had all been denied needed Medicaid services).

The typicality requirement ensures that the interests of the class representatives are so aligned with the interests of the class members that the class representatives advocate for the interests of the class members by pursuing their own interests. Here, individual plaintiffs are involuntarily homeless residents of Medford who are seeking to sleep and engage in other basic, life-sustaining activity without being awakened, moved-along, ticketed, fined and criminalized by defendants. Therefore, the claims of the named plaintiffs in this case are substantially identical to those of the proposed class members. Although plaintiffs' underlying factual situations and the details of their *past* citations, arrests, and other interactions with Medford police may differ, they nevertheless are typical as class members because they face the same *future* harms related to the campaign of anti-homelessness perpetrated by defendant. Plaintiffs

are subject to the identical risk of ongoing harassment, threats and criminalization as all other involuntarily homeless individuals in Medford. The consistency of the claims and the need for identical injunctive and declaratory relief of all plaintiffs and putative class members in this case satisfies the requirements of Rule 23(a)(3) for typicality.

4. **Adequacy of Representation**

Rule 23(a)(4) requires a determination that the proposed class representatives will adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) is met if: (1) the named representatives appear able to prosecute the action vigorously through qualified counsel; and (2) the representatives do not have antagonistic or conflicting interests with the unnamed members of the class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The burden is on the defendant to demonstrate that the representation will be inadequate. *See G.A. Enterprises, Inc. v. Leisure Living Communities, Inc.*, 517 F.2d 24, 26 n.3 (1st Cir. 1975) (standards for assessing adequacy of representation under Rule 23(a)(4) and Rule 23.1 are "essentially the same").

Here, there are no conflicts between named plaintiffs and other class members in this case. They have agreed to mutual representation. Like named plaintiffs Amber Macnab, Andre Bilodeau, Robert Bessy, Greg Killingsworth, Travis Greiner and Ronda Bjork, all homeless individuals in Medford are subject to the same pattern, practice, and custom of harassment and criminalization for the exact same reasons as the named plaintiffs. The relief sought by named plaintiffs is generally applicable to the class as a whole.

Additionally, Defense Counsel has walked the greenway extensively, spoken with local public defense and nonprofit legal services groups, consulted with the attorneys who worked on

the Blake v. Grants Pass matter and has held listening sessions with local social service providers to more adequately understand the persecution faced by the class.

Plaintiffs' counsel has extensive experience with litigation and will pursue this action vigorously on behalf of the class with the help of the Oregon ACLU Lawyers Committee and the NACDL Strategic Litigation Committee, and therefore the individual plaintiffs and their Counsel satisfy the requirements of Fed. R. Civ. P. 23(a)(4).

## B. Plaintiff Meets the Standard for Certification under Rule 23(b)(2)

In addition to the prerequisites of Rule 23(a), plaintiff must also satisfy one section of Rule 23(b) to obtain class certification. Plaintiffs meet the requirements in Rule 23(b)(2), because the declaratory and injunctive relief they seek would provide final relief to each member of the class. The Supreme Court describes the requirements of 23(b)(2) as:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgement would provide relief to each member of the class.

*Wal-Mart,* 564 U.S. at 360 (internal quotation marks omitted); *accord Parsons v. Ryan,* 754 F.3d 657, 687-88 (9th Cir. 2014). Rule 23(b)(2) class actions "involve classes which are difficult to enumerate but which involve allegations that a defendant's conduct affected all class members in the same way." *See 2 Newberg on Class Actions*, §4:40 at 168-69 (5th ed. 2011). For this reason, Rule 23(b)(2) certification is a critical route to certification classes in civil rights actions like this one. *See Parsons*, 754 F.3d at 686 (9th Cir. 2014) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples [of Rule 23(b)(2) class actions].") (*citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997)); *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir. 1998) ("[Rule] 23(b)(2) was adopted in order to permit the

prosecution of civil rights actions."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994) ("The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights.").

This Court has recognized that Rule 23(b)(2) is the correct vehicle for classes such as this, where the defendant is alleged to have acted on grounds applicable to all class members. See, e.g., *Lane*, 283 F.R.D. at 600-02 (Rule 23(b)(2) certification appropriate because class claims could be "resolved in one stroke" through injunction requiring the state to provide supported employment services to intellectual and developmental disabilities); *Sorenson v. Concannon*, 893 F. Supp 1469, 1479 (D. Or. 1994) (plaintiffs satisfied 23(b)(2) because they alleged "the use of statewide . . . disability determination procedures which violate" federal law); *Staley*, No. 3:00-cv-00078-ST, Doc. 31 at 9 (certifying a class under 23(b)(3) in a class involving alleged "failure to provide needed Medicaid services" because "[t]he systemic nature of the defendants' inactions is readily evident, even though not every class member has yet sought Medicaid benefits, or experienced the same degree of harm").

Here, plaintiffs seek declaratory and injunctive remedies that would provide uniform relief to each member of the class. Each plaintiff and each member of the proposed class seeks declaratory and injunctive relief putting an end to the defendant's practice of punishing involuntarily homeless individuals for engaging in innocent, life-sustaining activities such as sleeping. Defendant's violations have equal and general application to all class members, as all class members are in danger of being awakened, moved-along, ticketed, fined, prosecuted, imprisoned, or otherwise harassed for engaging in such activities. This case therefore satisfies the requirements of Rule 23(b)(2).

## IV. CONCLUSION

For the reasons set forth above, plaintiffs respectfully request that the Court certify this case as a class action, that their attorneys be designated as class counsel, and that plaintiffs be designated representatives of the following class: all involuntarily homeless individuals living in Medford, Oregon.

DATED this 15th day of March, 2022.

/s/ Justin N. Rosas
Justin N. Rosas, OSB #076412
Attorney for Plaintiffs