IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| ANDRE BILODEAU, ROBERT BESSY, AMBER MCNAB, GREG KILLINGSWORTH, TRAVIS GREINER, and RONDA BJORK, | Case No. 1:21-cv-00766-CL |
| Plaintiffs, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| CITY OF MEDFORD, | |
| Defendant. | |

**CLARKE**, United States Magistrate Judge:

This case comes before the Court on Plaintiffs' Motion for Class Certification (ECF No. 21). For the reasons below, Plaintiffs' motion should be DENIED.

## BACKGROUND

Plaintiffs are six homeless or unhoused individuals who live in Medford, Oregon. First Am. Compl. ¶¶ 24–60, ECF No. 40 ("FAC"). Plaintiffs allege they are involuntarily homeless.

*Id.* Plaintiff Travis Greiner has been homeless or unhoused for over six years. Declaration of

Travis Greiner ¶ 1, ECF No. 28-3 ("Greiner Decl."). In 2021, Plaintiff Greiner was "swept from

a campsite twice[,] . . . cited for possession of a controlled substance and prohibited camping[,]

[and] issued an exclusion zone notice." *Id.* ¶ 3. Plaintiff Greiner cannot go to the Urban

Campground, a shelter site in Medford, "because of its curfew that would keep [him] from being

able to do [his] work and care for [his] mother." *Id.* ¶ 6. Plaintiff Ronda Bjork has been homeless

or unhoused for over ten years. Declaration of Ronda Bjork ¶ 1, ECF No. 28-2 ("Bjork Decl.").

In 2021, Plaintiff Bjork was "swept from a campsite[,] . . . cited with Possession of a Controlled

Substance[,] and given an exclusion zone notice." *Id.* ¶ 4. Plaintiff Bjork was also "cited for

Prohibited Car Camping in 2021." *Id.* ¶ 6. Plaintiff Bjork cannot go to the Urban Campground

"because of discipline." *Id.* ¶ 9.

Plaintiffs allege that Defendant, through a combination of ordinances, customs, policies,

and practices, has unconstitutionally punished and criminalized the existence of homeless people

in Medford. Pls.' Mot. Class Certification 5, ECF No. 21 ("Pls.' Mot."). Plaintiffs seek

declaratory and injunctive relief from the enforcement of the following Medford Municipal Code

("MMC") ordinances: MMC 5.256 (Civil Exclusion), MMC 5.257 (Prohibited Camping, Lying,

and Sleeping), MMC 5.258 (Prohibited Solicitation), MMC 5.296 (Theft of Services), and MMC

5.557 (Overnight Sleeping in Vehicles).[1] *See* FAC ¶¶ 114–15, ECF No. 40; *see also* Pls.' Mot. 9,

ECF No. 21. Plaintiffs seek relief for themselves and on behalf of all involuntarily homeless

people in Medford. Pls.' Mot. 9, ECF No. 21.

---

[1] In their FAC, Plaintiffs cite only to MMC 5.256 (civil exclusion zone) and MMC 5.257 (anti-sleeping and anti-camping ordinance) but also identify "the theft of services laws and criminal trespass laws." FAC ¶¶ 114–15, ECF No. 40. Defendant identifies these laws as MMC 5.258, MMC 5.296, and MMC 5.557. *See* Def.'s Resp. 44, ECF No. 26; *see also* Pls.' Mot. 9, ECF No. 21.

## PROCEDURAL HISTORY

On May 18, 2021, Plaintiffs filed their original complaint. *See* Compl., ECF No. 1. On July 15, 2021, Defendant filed an answer. *See* Answer, ECF No. 7.

On March 15, 2022, Plaintiffs filed a motion for class certification. *See* Pls.' Mot., ECF No. 21. On April 15, 2022, Plaintiffs filed a motion for leave to file an amended complaint. *See* Pls.' Mot. Amend, ECF No. 25.

On September 13, 2022, this Court held oral argument on Plaintiffs' motion for class certification and Plaintiffs' motion for leave to file an amended complaint. *See* Minutes, ECF No. 36. The Court granted Plaintiffs' motion for leave to file an amended complaint and ordered Plaintiffs to file their amended complaint by September 23, 2022. *See* Order, ECF No. 37. Plaintiffs failed to do so within that time frame.

On October 14, 2022, the Court issued the following order:

> Plaintiffs' amended complaint was due on 9/23/2022. Plaintiffs
> have failed to file their amended complaint. Plaintiffs are ordered
> to Show Cause in Writing by 10/21/2022 why this case should not
> be dismissed for lack of prosecution.

Order, ECF No. 39.

On October 24, 2022, Plaintiffs filed their amended complaint. *See* FAC, ECF No. 40. Plaintiffs' counsel attached a letter informing the Court that it was counsel's "original mistaken understanding that when [he] made a motion and attached the amended complaint and then that motion was ruled on in [his] client's favor, the amended complaint was then entered." Letter, ECF No. 40-1.[2] On November 7, 2022, Defendant filed an answer to Plaintiffs' FAC. *See* Answer, ECF No. 42.

---

[2] *See* Local Rule 15(d) ("On entry of an order granting the motion, the original amended pleading must be submitted to the clerk for filing. . . . The clerk will not detach the proposed amended pleading from the motion.").

## STANDARD OF REVIEW

Plaintiffs seeking class certification must affirmatively demonstrate that they meet the four threshold requirements of Fed. R. Civ. P. 23(a) and at least one of the requirements of Fed. R. Civ. P. 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). To satisfy Rule 23(a), the plaintiffs must show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). To certify a class under Rule 23(b)(2), as Plaintiffs seek here, the plaintiffs must also show that the defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Plaintiffs bear the burden of demonstrating that each element of Rule 23 is satisfied. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). While the primary focus is not on the merits of the plaintiffs' claims, a court must conduct a "rigorous" analysis and conclude that each of the four requirements of Rule 23(a) has been affirmatively shown with facts before certification can occur. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied"); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."). However, at the class certification stage, a court does not hold plaintiffs to the same evidentiary standards that will apply at trial. *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018).

**DISCUSSION**

Pursuant to Fed. R. Civ. P. 23, Plaintiffs move for an order certifying a class defined as "all involuntarily homeless individuals living in Medford, Oregon" including "homeless individuals who sometimes sleep outside of city limits to avoid harassment and punishment by Defendant as addressed in this lawsuit." Pls.' Mot. 5, ECF No. 21. Defendant argues Plaintiffs' motion should be denied because: (1) Plaintiffs' proposed class definition is inadequate as Plaintiffs fail to define the qualifier "involuntarily;" (2) Plaintiffs fail to provide evidence in support of their motion; (3) Plaintiffs fail to establish numerosity, commonality, typicality, and adequacy as required under Fed. R. Civ. P. 23(a); and (4) Plaintiffs fail to establish whether Defendant "acted or refused to act" as required under Fed. R. Civ. P. 23(b). Def.'s Resp. 18–43, ECF No. 26. For the reasons that follow, Plaintiffs' motion for class certification (ECF No. 21) should be denied.

## I. Plaintiffs' proposed class definition is adequate.

Defendant argues Plaintiffs' proposed class definition is inadequate because Plaintiffs fail to define the qualifier "involuntarily." Def.'s Resp. 20, ECF No. 26. The Ninth Circuit recently explained that "[p]ersons are involuntarily homeless if they do not 'have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free.'" *Johnson v. City of Grants Pass*, 50 F.4th 787, 792 n.2 (9th Cir. 2022) (quoting *Martin v. City of Boise*, 920 F.3d 584, 617 n.8 (9th Cir. 2019)). Put differently, "[a] person with access to temporary shelter is not involuntarily homeless unless and until they no longer have access to shelter." *Id.* at 805 n.24. The Court notes that Plaintiffs' proposed class definition is identical to the proposed class definition in *Johnson. See* 50 F.4th at 795. As such, the Court concludes Plaintiffs' proposed class definition is adequate under *Johnson* and *Martin.*

## II. Plaintiffs have failed to submit material sufficient for the Court to form a reasonable judgment on each Rule 23 requirement.

As a preliminary matter, the Court addresses the sufficiency of the evidence that Plaintiffs have presented to the Court at the class certification stage.[3]

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original). However, the Ninth Circuit has "never equated a district court's 'rigorous analysis' at the class certification stage with conducting a mini-trial." *Sali*, 909 F.3d at 1004. A plaintiff must submit "evidentiary proof" in support of class certification, but such proof need not be admissible evidence. *See id.* "[I]n evaluating a motion for class certification, a district court need only consider 'material sufficient to form a reasonable judgment on each [Rule 23(a)] requirement.'" *Id.* at 1005 (citation omitted; alteration in original).

Plaintiffs submitted no supporting evidence with their motion for class certification. *See* Pls.' Mot., ECF No. 21. With their reply, Plaintiffs submitted 220 pages of various evidence, consisting of: (1) a declaration from Plaintiffs' counsel, *see* ECF No. 28-1; (2) two brief declarations of Plaintiffs Bjork and Greiner, *see* ECF Nos. 28-2, 28-3; (3) a brief declaration from Plaintiffs' counsel's intern, *see* ECF No. 28-4; (4) a 114-page transcript of Jackson County Municipal Court proceedings that involved Plaintiffs Bjork and Greiner, *see* ECF No. 28-5; (5)

---

[3] Plaintiffs represent that Defendant "produced 26,000 pages of discovery on Christmas week knowing that [Plaintiffs'] motion for class certification was due in early February." Pls.' Reply 10–11, ECF No. 28. Plaintiffs insist such actions were "cruel" and "unprofessional." *Id.* at 11. The Court notes that Plaintiffs did not file any motions for an extension of time in this case. *See* Docket, Case No. 1:21-cv-00766-CL. Accordingly, the Court will not entertain Plaintiffs' argument that Defendant's conduct "violates rule of professional conduct 3.4 Fairness to Opposing Party and Counsel." Pls.' Reply 11, ECF No. 28.

two motions for dismissal filed by the City of Medford in the aforementioned municipal court proceedings, *see* ECF Nos. 28-6, 28-7; (6) an email exchange between Plaintiffs' counsel and Defendant's counsel concerning discovery, *see* ECF No. 28-8; (7) an email exchange between Plaintiffs' counsel and Defendant's counsel concerning a motion to dismiss in the aforementioned municipal court proceedings, *see* ECF No. 28-9; (8) a 16-page document titled "National Discovery" discussing various state rules concerning discovery nationwide, *see* ECF No. 28-10; (9) a 9-page document titled "Oregon Discovery Charging Research" that appears to be a legal memorandum, *see* ECF No. 28-11; (10) a copy of a temporary restraining order from a case in the U.S. District Court for the Eastern District of California, *see* ECF No. 28-12; (11) several 2- to 3-page declarations of homeless individuals living in Medford, Oregon, *see* ECF No. 28-13; and (12) an "exclusions" list from the Medford Police Department, *see* ECF No. 28-14.

Plaintiffs rarely cite to any of these materials in support of their arguments and fail to explain how each document supports their motion.[4] As a result, and as discussed in greater detail below, Plaintiffs have failed to submit material sufficient for this Court to form a reasonable judgment on each Rule 23 requirement. *See Sali*, 909 F.3d at 1005.

**A.    Rule 23(a)**

1. Numerosity

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "For purposes of this requirement, 'impracticability' does not mean 'impossibility,' but only the difficulty or

---

[4] The Court notes that Plaintiffs' motion for class certification is nearly identical to the motion for class certification filed in *Blake v. City of Grants Pass. See* Pls.' Mot. Class Certification, ECF No. 25, Case No. 1:18-cv-01823-CL. A notable difference between the *Blake* motion and this motion is the near-total absence of citations to evidence here.

inconvenience of joining all members of the class." *Johnson*, 50 F.4th at 803 (quoting *Harris v.*

*Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964)) (quotation marks

omitted). There is no specific number of class members required. *See Gen. Tel. Co. of the Nw. v.*

*EEOC*, 446 U.S. 318, 330 (1980). "However, proposed classes of less than fifteen are too small

while classes of more than sixty are sufficiently large." *Johnson*, 50 F.4th at 803 (citing *Harik v.*

*Cal. Teachers Ass'n*, 326 F.3d 1042, 1051–52 (9th Cir. 2003)).

 In their motion, Plaintiffs argue:

> The most recent "point in time" count in Jackson County found
> 727 individuals on the street and another 2300 individuals
> precariously housed for a total of 3000 people who are homeless or
> at immediate risk of homelessness. Hundreds of these people live
> in Medford. Last year, Medford School District reported 1270
> homeless youth enrolled in the District. It would be impracticable
> to join every one of these homeless individuals living in Medford
> in this litigation. Plaintiffs have therefore met the numerosity
> requirement for class certification.

Pls.' Mot. 13–14, ECF No. 21. Plaintiffs do not offer a copy of the Jackson County "point in

time" ("PIT") count in support of their motion. Additionally, in an earlier section of Plaintiffs'

motion, Plaintiffs cite to an online spreadsheet and claim that there are 1,270 homeless youth

enrolled in the Medford School District. *See id.* at 7. Plaintiffs do not, however, define the

spreadsheet's "columns"—titled "In Shelter," "Doubled-Up," "Motel/Hotel," and

"Unsheltered"—or explain how those categories fall within the scope of their proposed class

definition.

 In their reply, Plaintiffs also argue:

> It is clear by any account that Medford has a substantial
> involuntary houseless population. When I walk any given mile of
> the greenway area, I meet at least 15-20 unhoused members of the
> community. (Decl. Rosas) During September of 2020, Mr. Mitton
> and I both met with almost fifty members of the unhoused
> community who were camping in Hawthorne Park. I discussed

with them their experiences with police which mirror those of the declarations and the plaintiffs in this case. I am on the ACLU Lawyers Board for Oregon and I can attest that during those meetings the reports the ACLU was getting from community organizers was similar. Further, in the City Council meeting discussing the ordinance, [the] City itself talked about the hundreds of people sleeping in tents at that time. The City should be admonished for its arguments about numerosity.

Pls.' Reply 14, ECF No. 28. Aside from citing a declaration from Plaintiffs' counsel, Plaintiffs

offer no evidence in support of their claims. *See* Declaration of Justin Rosas ¶ 15, ECF No. 28-1

("Rosas Decl.") ("I walk the greenway frequently and meet unhoused members of our

community, if I walk a mile I can expect to see between 15-20 unhoused members of the

community per side of the greenway and affiliate parks.").

Because Plaintiffs do not offer or cite to evidence in support of their arguments, Plaintiffs

have failed to submit material sufficient for the Court to form a reasonable judgment about

whether Plaintiffs satisfy the numerosity requirement under Rule 23(a)(1). *See Sali*, 909 F.3d at

1005.

### 2. Commonality

Under Rule 23(a)(2), a class may be certified only if "there are questions of law or fact

common to the class." Fed. R. Civ. P. 23(a)(2); *see also Johnson*, 50 F.4th at 804 ("A class

satisfies Rule 23's commonality requirement if there is at least one question of fact or law

common to the class.") (citing *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir.

2013)). A common question "must be of such a nature that it is capable of class-wide

resolution—which means that the determination of its truth or falsity will resolve an issue that is

central to the validity of each of the claims in one stroke." *Dukes*, 564 U.S at 350. "What matters

to class certification . . . is not the raising of common 'questions'—even in droves—but rather,

the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted, emphasis in original).

"[A] court has an obligation before certifying a class to 'determin[e] that Rule 23 is satisfied, even when that requires inquiry into the merits.'" *Goldman Sachs Group, Inc. v. Ark. Teacher Ret. Sys.,* 141 S. Ct. 1951, 1960–61 (2021) (citations omitted; second alteration in original); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). "[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citation omitted); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) ("In order for the plaintiffs to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the plaintiffs' claim.") (citation omitted).

Plaintiffs argue their claims share several central questions, including "whether Medford's custom, pattern and practice of enforcing anti-camping and anti-sleeping ordinances and criminal trespass laws, and imposing associated fines and fees against involuntarily homeless individuals violates the Eighth Amendment of the Constitution." Pls.' Mot. 15–16, ECF No. 21. Defendant argues that Plaintiffs cannot satisfy the commonality requirement because Medford "does not have a city-wide prohibition but instead has specific time-place-manner restrictions[.]" Def.'s Resp. 34, ECF No. 26. Defendant emphasizes that Plaintiffs' motion "is simply a copy-and-paste version of plaintiffs' motion for class certification from

*Blake v. City of Grants Pass*, except Plaintiffs in this case (unlike those in *Blake*) have cited to no

supporting declarations." *Id.* at 18.

In *Johnson,* the Ninth Circuit held that this Court's *Blake* decision correctly found that

the plaintiffs' claims "present at least one question and answer common to the class: 'whether

[the City's] custom, pattern, and practice of enforcing anti-camping ordinances, anti-sleeping

ordinances, and criminal trespass laws ... against involuntarily homeless individuals violates the

Eighth Amendment of the Constitution.'" *Johnson*, 50 F.4th at 804 (alteration in original).[5] The

Ninth Circuit noted that the question of "whether the City's enforcement of the anti-camping

ordinances against all involuntarily homeless individuals violates the Eighth Amendment" was

"capable of common resolution on a prospective class-wide basis, *as the record establishes*." *Id.*

at 804 n.22 (emphasis added).

Here, there is no record for this Court to determine whether Plaintiffs' claims present at

least one question and answer common to the class. Defendant offers this Court various evidence

showing that Defendant does not enforce a citywide ban like those at issue in *Martin* and

*Johnson/Blake*. In February 2021, Defendant "began seeking stakeholder and public feedback on

a draft of a post-*Blake* prohibited camping ordinance that was not a citywide prohibition on

sleeping on public property, but instead a set of time-place-manner restrictions that allowed

individuals experiencing homelessness to lawfully sleep with bedding[.]" Def.'s Resp. 12, ECF

No. 26 (citing MMC 5.257(3)–(5)).

Defendant also offers evidence of its efforts to provide shelter options for homeless

individuals in Medford. Since 2017, Defendant has financially subsidized a low-barrier

---

[5] On appeal, *Blake v. City of Grants Pass* became *Johnson v. City of Grants Pass* because Plaintiff Debra Blake passed away while the appeal was pending. *See Johnson*, 50 F.4th at 800.

transitional housing campground in partnership with the Rogue Retreat. Declaration of Eric

Mitton, Ex. 1, ECF No. 26-2 ("Mitton Decl."). Defendant has also financially supported the

Kelly Shelter, a permanent low-barrier shelter operated by the Rogue Retreat. *Id.* ¶ 5. In July

2020, Defendant created the Urban Campground, a low-barrier tent camping site operated by the

Rogue Retreat. *Id.* ¶ 3. In July 2022, Defendant also opened the Navigation Center, a low-barrier

shelter with wraparound services. *Id.* ¶ 4. Before enforcing the camping ordinance, the Medford

Police Department Livability Team posts "72-hour notices at unlawful camps" and "facilitates

service providers engaging with the occupants of those camps, typically including providers of

shelter, mental health services, and addictions services." Declaration of Geoff Kirkpatrick ¶ 2,

ECF No. 26-1.

Plaintiffs attempt to replicate the case against the City of Grants Pass by making identical

arguments against the City of Medford. In *Blake*, plaintiffs argued:

> In this case, plaintiffs satisfy the commonality requirement. They
> seek redress for a common injury facing every involuntarily
> homeless person in Grants Pass - defendant's custom, pattern and
> practice of criminalizing innocent, life-sustaining behavior such as
> resting, sleeping and staying warm. . . . Plaintiffs' claims share
> several central questions, including: (1) whether Grants Pass'
> custom, pattern and practice of enforcing anti-camping and anti-
> sleeping ordinances and criminal trespass laws, and imposing
> associated fines and fees against involuntarily homeless
> individuals violates the Eighth Amendment of the Constitution[.]

*See* Pls.' Mot. Class Certification 15–16, ECF No. 25, Case No. 1:18-cv-01823-CL. Here,

Plaintiffs argue:

> In this case, plaintiffs satisfy the commonality requirement. They
> seek redress for a common injury facing every involuntarily
> homeless person in Medford - defendant's custom, pattern and
> practice of criminalizing innocent, life-sustaining behavior such as
> resting, sleeping and staying warm. . . . Plaintiffs' claims share
> several central questions, including: (1) whether Medford's
> custom, pattern and practice of enforcing anti-camping and anti-

sleeping ordinances and criminal trespass laws, and imposing
associated fines and fees against involuntarily homeless
individuals violates the Eighth Amendment of the Constitution[.]

Pls.' Mot. 15–16, ECF No. 21. The only difference between the two is that Plaintiffs change

"Grants Pass" to "Medford."[6]

The problem is that the Grants Pass ordinances in *Johnson/Blake* and the Medford

ordinances at issue here are not the same. Medford does not have a citywide ban on sleeping or

camping. In *Martin*, the Ninth Circuit explained that "[e]ven where shelter is unavailable, an

ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular

locations might well be constitutionally permissible." *Martin*, 920 F.3d at 617 n.8.

"Following *Martin*, several district courts have held that the government may evict or punish

sleeping in public in some locations, provided there are other lawful places within the

jurisdiction for involuntarily homeless individuals to sleep." *Johnson*, 50 F.4th at 812 n.33.[7] In

the absence of a citywide ban in Medford, and without sufficient evidence from Plaintiffs, this

Court cannot determine whether there are questions of law or fact common to the class.[8] As such,

---

[6] In *Blake v. City of Grants Pass*, this Court encouraged the City of Grants Pass to develop adequate strategies for addressing its homeless crisis and specifically referenced the City of Medford's efforts as an example. *See Blake*, No. 1:18-cv-01823-CL, 2020 WL 4209227, at *16 (D. Or. Jul. 22, 2020).

[7] *See, e.g., Gomes v. County of Kauai*, 481 F. Supp. 3d 1104, 1109 (D. Haw. 2020) ("[A]lthough perhaps Plaintiffs could not sleep at [a park] without receiving a citation, there is nothing in the Complaint to suggest that Plaintiffs could not sleep in other public places within the County[.]"); *Aitken v. City of Aberdeen*, 393 F. Supp. 3d 1075, 1082 (W.D. Wash. 2019) ("With respect to the Eviction Ordinance, Plaintiffs are unlikely to succeed in their Eighth Amendment claim. *Martin* does not limit the City's ability to evict homeless individuals from particular public places[.]"); *Blaike v. El-Tawansy*, 2022 WL 3692647, at *3 (N.D. Cal. Aug. 25, 2022) ("[Defendant] here seeks only to remove Plaintiffs from a particular parking lot. No citywide ban on sleeping is being enforced, nor such an official policy exist. . . . Plaintiffs will therefore not be able to prevail on their Eighth Amendment claims.").

[8] This Court does not foreclose the possibility of a plaintiff bringing an Eighth Amendment claim under *Martin* against a city that has an ordinance that restricts sitting, lying, or sleeping outside at particular times or in particular places. *See, e.g., Wills v. City of Monterey*, --- F. Supp. 3d ----, 2022 WL 3030528, at *8 (N.D. Cal. Aug. 1, 2022) ("The Court will not countenance that a city may constitutionally criminalize sleeping outside during the evenings so long as it provides some public space that is available during daytime hours. *Martin* cannot and does not stand for such a proposition."). Although its holding in *Martin* was a narrow one, the Ninth Circuit did not definitively answer that question in *Martin* or *Johnson*. *See Martin* 920 F.3d at 617 n.8 ("Even where shelter is unavailable, an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular locations *might* well be

Plaintiffs have failed to submit material sufficient for this Court to form a reasonable judgment on whether Plaintiffs satisfy the commonality requirement under Rule 23(a)(2). *See Sali*, 909 F.3d at 1005.

### 3. Typicality

Under Rule 23(a)(3), plaintiffs must show that the claims of the representative parties are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon*, 976 F.2d at 508). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* However, typicality "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Johnson*, 50 F.4th at 805 (citation omitted).

Plaintiffs argue they satisfy the typicality requirement because "[t]he experiences of the plaintiffs in this case are typical of those of the involuntarily unhoused in the community as shown by the large number of people who are excluded and cited for prohibited camping on an annual basis. (Ex. 9 Exclusion Zone Numbers)[.]" Pls.' Reply 16, ECF No. 28.

Here, the Court has no evidence from which it can determine whether Plaintiffs Bilodeau, Bessy, McNab, and Killingsworth satisfy the typicality requirement. Additionally, while Plaintiffs Bjork and Greiner have submitted declarations, the Court cannot determine to what

---

constitutionally permissible.") (emphasis added); *see also Johnson*, 50 F.4th at 812 n.33 ("Because the City has not established any realistically available place within the jurisdiction for involuntarily homeless individuals to sleep we need not decide whether alternate outdoor space would be sufficient under *Martin*."). Plaintiffs, however, do not make that argument here.

extent the interests of the named representatives align with the interests of the class. In Plaintiffs'

original complaint and reply, Plaintiffs submitted various declarations from homeless individuals

living in Medford. However, Plaintiffs fail to explain how the nature of their claims are typical of

other class members' claims.[9] At no point do Plaintiffs cite the contents of these declarations or

otherwise explain how these declarations support their motion. As such, Plaintiffs have failed to

provide the Court with material sufficient to form a reasonable judgment on whether Plaintiffs

satisfy the typicality requirement under Rule 23(a)(3). *See Sali*, 909 F.3d at 1005.

### 4. Adequacy of Representation

Under Rule 23(a)(4), plaintiffs must show that "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determining whether

representation is adequate requires the court to consider two questions: '(a) do the named

plaintiffs and their counsel have any conflicts of interest with other class members and (b) will

the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"

*Sali*, 909 F.3d at 1007 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir.

2000)). "District courts are properly given discretion to decide matters of class representation

and class action administration . . . because they are responsible for protecting absent class

members' due process interests[.]" *Radcliffe v. Hernandez*, 818 F.3d 537, 549 (9th Cir. 2016).

First, Plaintiffs argue there are no conflicts of interest between them and other class

members. Pls.' Mot. 18, ECF No. 21. As explained above, given the absence of material

sufficient for this Court to form a reasonable judgment on the other Rule 23(a) requirements, the

Court likewise cannot form a reasonable judgment on whether conflicts exist between Plaintiffs

---

[9] For instance, Plaintiffs submit a declaration from a homeless individual living in Medford that states she "took an overdose of pills[,] went to the hospital[,]" and later went to a crisis center. Declaration of Sherry Herndon 1–2, ECF No. 28-13 ("Herndon Decl."). The individual was later "kicked out[.]" *Id.* at 2. Nothing in the declaration indicates that this individual was affected by the ordinances at issue in this case.

and the other class members. *See Dukes*, 564 U.S. at 349 n.5 (noting that the commonality and typicality requirements "tend to merge with the adequacy-of-representation requirement") (citing *Falcon*, 457 U.S. at 157 n.13).

Second, Plaintiffs argue their counsel satisfies the requirements of Rule 23(a)(4) because:

> [Plaintiffs'] Counsel has walked the greenway extensively, spoken with local public defense and nonprofit legal services groups, consulted with the attorneys who worked on the Blake v. Grants Pass matter and has held listening sessions with local social service providers to more adequately understand the persecution faced by the class.

> Plaintiffs' counsel has extensive experience with litigation and will pursue this action vigorously on behalf of the class with the help of the Oregon ACLU Lawyers Committee and the [National Association of Criminal Defense Lawyers] Strategic Litigation Committee[.]

Pls.' Mot. 18–19, ECF No. 21. Plaintiffs also argue that their "[c]ounsel has met with counsel from the Grants Pass case and Boise case and is certain the class is similarly represented in this case." Pls.' Reply 17, ECF No. 28. Plaintiffs ask this Court to designate their counsel as class counsel. Pls.' Mot. 21, ECF No. 21.

"Competent representation by class counsel is crucial to the prosecution of a class action." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262 (2d Cir. 2021). Under Rule 23(g)(1)(A), when appointing class counsel, a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;

> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

> (iii) counsel's knowledge of the applicable law; and

> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A); *Northstar Fin. Advisors Inc. v. Schwab Inv.*, 779 F.3d 1036, 1048 (9th Cir. 2015). A court also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, given counsel's lack of experience in handling class actions or other complex civil litigation in federal court, the Court cannot find that counsel will adequately represent the interests of the class under Rule 23(a)(4) and Rule 23(g).[10] "The adequacy requirement is based on principles of constitutional due process; accordingly, a court cannot bind absent class members [if] class representation is inadequate." *J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 273 (D. Or. 2021) (citation omitted). Plaintiffs' counsel, a criminal defense attorney, does not represent that he has any experience handling civil cases in federal court or litigating class action lawsuits. To date, no other attorneys have appeared on behalf of Plaintiffs in this action.

The Court does not suggest that Plaintiffs' counsel is not passionate about his work. It is apparent to this Court that Plaintiffs' counsel is deeply invested in representing his clients. The Court also appreciates the need for members of disadvantaged communities, such as Plaintiffs and the proposed class here, to have access to attorneys. However, the Court must comply with its responsibility to ensure class counsel can adequately represent the interests of the class. *See Radcliffe*, 818 F.3d at 549 (noting that a district court is "responsible for protecting absent class members' due process interests"). While Plaintiffs' counsel is a very experienced criminal defense attorney, Plaintiffs' counsel has no experience handling class actions, other complex

---

[10] Because Plaintiffs' counsel requests that this Court designate him as class counsel, the Court includes an analysis of Rule 23(g). "In 2003, . . . Congress amended Fed. R. Civ. P. 23 to set out discrete standards for the appointment of class counsel." *Northstar*, 779 F.3d at 1047–48. Courts "historically assessed the adequacy of class counsel under Rule 23(a)(4) even though that provision only concerns the adequacy of the class representatives. When Congress enacted Rule 23(g) governing the appointment of class counsel, it codified this judicial practice, taking 'a step towards the fuller acknowledgment that it is class counsel, not the class representatives, who are truly litigating the class's claims.'" *Jin*, 990 F.3d at 263 (internal citations omitted).

civil litigation, or the types of claims asserted in this action. Accordingly, the Court finds that
Plaintiffs' counsel cannot adequately represent the class under Rule 23(a)(4) and Rule 23(g).

## B.    Rule 23(b)

Certification under Rule 23(b)(2) requires that "the party opposing the class has acted or
refused to act on grounds that apply generally to the class, so that final injunctive relief or
corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.
23(b)(2). This rule "ordinarily will be satisfied when plaintiffs have described the general
contours of an injunction that" (1) "would provide relief to the whole class," (2) "that is more
specific than a bare injunction to follow the law," and (3) "that can be given greater substance
and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and
expert testimony." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 972 (9th Cir.
2019) (quoting *Parsons*, 754 F.3d at 689 n.35). The Supreme Court explained:

> The key to the (b)(2) class is the indivisible nature of the injunctive
> or declaratory remedy warranted—the notion that the conduct is
> such that it can be enjoined or declared unlawful only as to all of
> the class members or as to none of them. . . . In other words, Rule
> 23(b)(2) applies only when a single injunction or declaratory
> judgment would provide relief to each member of the class.

*Dukes*, 564 U.S. at 360 (internal quotations and citations omitted).

Plaintiffs argue that each named Plaintiff and each member of the proposed class seeks
"declaratory and injunctive relief putting an end to the defendant's practice of punishing
involuntarily homeless individuals for engaging in innocent, life-sustaining activities such as
sleeping." Pls.' Mot. 20, ECF No. 21. Plaintiffs also argue that "Defendant's violations have
equal and general application to all class members, as all class members are in danger of being
awakened, moved-along, ticketed, fined, prosecuted, imprisoned, or otherwise harassed for
engaging in such activities." *Id.*

As explained, Defendant does not have a citywide ban on camping or sleeping. Additionally, Plaintiffs do not offer material sufficient for this Court to form a reasonable judgment on each Rule 23(a) requirement. As a result, Plaintiffs have failed to describe the general contours of an injunction that would provide relief to the whole class under the requirements of Rule 23(b)(2). *See Snyder*, 922 F.3d at 972.

## C.    Conclusion

Because Plaintiffs do not satisfy all requirements of Rule 23, Plaintiffs' motion should be denied. In making this recommendation, the Court is not suggesting that the individual Plaintiffs do not have meritorious cases. The Court only finds that class certification is not appropriate because: (1) Plaintiffs have failed to submit material sufficient for the Court to form a reasonable judgment on each Rule 23 requirement; and (2) counsel lacks the experience necessary to adequately represent the interests of the class as required by Rule 23(a)(4) and Rule 23(g).

///

///

///

# RECOMMENDATION

For the reasons above, Plaintiffs' Motion for Class Certification (ECF No. 21) should be DENIED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Findings and Recommendation will be referred to a district judge. Objections to this Findings and Recommendation, if any, are due fourteen (14) days from today's date. *See* Fed. R. Civ. P. 72. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED this __29__ day of November, 2022.

MARK D. CLARKE
United States Magistrate Judge