**Anit Jindal, OSB #171086**
AnitJindal@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Attorneys for Amicus Curiae*
*League of Oregon Cities*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **ANDRE BILODEAU, ROBERT BESSY, AMBER MCNAB AND GREG KILLINGSWORTH, TRAVIS GREINER, RONDA BJORK**, individuals, on behalf of themselves and all others similarly situated; and DOES 3 through 100,<br><br>                                    Plaintiffs,<br><br>v.<br><br>**CITY OF MEDFORD**,<br><br>                                    Defendant. | Case No. 1:21-cv-00766-CL<br><br>**AMICUS LEAGUE OF OREGON CITIES' BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

### INTEREST OF *AMICUS CURIAE*[1]

Founded in 1925, the League of Oregon Cities is an intergovernmental entity consisting of Oregon's 241 incorporated cities. Oregon cities formed the League to be, among other things, the effective and collective voice of Oregon's cities before the courts.

---

[1] No counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amici curiae* or their counsel made a monetary contribution to its preparation or submission. The City of Medford is a member of the League of Oregon Cities.

Page 1 –   AMICUS LEAGUE OF OREGON CITIES' BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## SUMMARY OF ARGUMENT

Oregon cities are, quite literally, on the front lines of confronting homelessness in America. Oregon has the third-highest percentage of unsheltered homeless population in America and the highest percentage of chronic homeless.[2] Oregon cities have been far from complacent in their efforts to address this serious, yet complicated, crisis. Cities are attempting a broad range of solutions, from economic to creative. At the same time, Oregon cities are also obligated to provide safe and livable communities for all residents. The cost imposed by unchecked homeless encampments is catastrophic. Cities are forced to spend huge portions of already stretched budgets on law enforcement patrols and costly yet ineffective, short-term clean-up efforts – funds that could otherwise be used to meaningfully address the housing crisis.

The City of Medford's camping, sleeping, and civil exclusion ordinances are constitutional for the reasons described in Medford's motion for summary judgment. A contrary ruling in this case would harm Oregon cities by hampering ongoing efforts to place necessary limitations on unchecked camping on public property.

    A.    **Invalidating Medford's ordinances would call into question Oregon cities' reasonable efforts to comply with *Martin* and *Johnson*.**

The Court should grant Medford's motion for summary judgment because Medford's challenged ordinances are a reasonable response to public camping and consistent with Ninth Circuit precedent. In *Martin* and *Johnson*, the Ninth Circuit established a "narrow holding" that it is "unconstitutional to punish simply sleeping *somewhere* in public if one has nowhere else to

---

[2] Nicole Hayden and Jamie Goldberg, *Oregon's Recent Growth in Homelessness Among Largest in Nation,* The Oregonian/ OregonLive (April 5, 2023), https://www.oregonlive.com/politics/2023/04/oregons-recent-growth-in-homelessness-among-largest-in-nation.html#:~:text=Chronic%20homelessness%20has%20been%20quickly,for%20a%20total%20of%206%2C447.

Page 2 –    AMICUS LEAGUE OF OREGON CITIES' BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

do so." *Johnson v. City of Grants Pass*, 50 F.4th 787, 813 (9th Cir. 2022). However, the Ninth Circuit left cities free to create reasonable time, place, and manner restrictions on the act of sleeping on public property. *Martin v. City of Boise*, 920 F.3d 584, 617 n.8 (9th Cir. 2019) ("Even where shelter is unavailable, an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular locations might well be constitutionally permissible."). For example, the court explained that a city could permissibly bar the use of "certain structures" (e.g., tents, stoves, fires) in public. *Id.*; *see also Johnson*, 50 F.4th at 808 & n.34 (holding that Eighth Amendment did not protect tents, fires, or stoves on public property). Further, the court explained that a city could exclude homeless individuals from public property if they "engage in prohibited activity unrelated to their status as homeless persons." *Id.* at 812.

In response to *Martin*, the Oregon legislature directed cities to update their local laws regarding sleeping on public property by July 2023 to be objectively reasonable as to "time, place and manner with regards to persons experiencing homelessness."[3] Over the past two years, consistent with this directive, Oregon cities have worked to implement *Martin* and *Johnson*. Numerous Oregon cities have created time, place, and manner restrictions permitting public camping and sleeping by homeless individuals at appropriate times and places, but restricted public camping and sleeping in other times and places.[4] For example, other cities, have limited

---

[3] ORS 195.530(3).

[4] *See, e.g.*, Hillsboro, Or., Ordinance, No. 6454 (2023), https://hillsboro-oregon.civicweb.net/document/58710/Ordinance%20No.%206454.pdf?handle=51FDE04F6EDB4B5E82B0920911F85F99; Portland, Or., Ordinance No. 191311 (2023), https://www.portland.gov/council/documents/ordinance/passed/191311; Molalla, Or., Ordinance No. 2023-04 (2023), https://current.cityofmolalla.com/14976/widgets/46682/documents/43833; Bend, Or., Ordinance No. 2458 (2023), https://bend.municipal.codes/enactments/OrdNS-2458; Wilsonville, Or., Ordinance No. 879 (2023), https://www.wilsonvilleparksandrec.com/ordinances/ordinance-no-879.

**Page 3 –   AMICUS LEAGUE OF OREGON CITIES' BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

camping and sleeping near schools, highways, protected wildlife habitat, and construction sites.[5] Cities have also enacted limitations on the manner of camping, including restrictions on altering ground soil, keeping unleashed animals, disposing of wastewater, and setting fires.[6] Finally, cities have relied on laws prohibiting illegal activities (e.g., violence, drug use) to respond to health and safety concerns on public property.[7]

Medford's challenged ordinances are consistent with these efforts by cities across the state to comply with *Martin* and *Johnson* while simultaneously responding to the health and safety needs of all community members. A contrary decision from this Court would hamstring cities' ongoing efforts to create and enforce reasonable restrictions on unchecked camping on public property and call into question numerous newly-enacted laws in municipalities across the state. This Court should grant Medford's motion for summary judgment so that Oregon cities can continue the important work of implementing *Martin* and *Johnson* while responding to the myriad issues posed by large, unregulated campsites on streets, parks, and other public property.

---

[5] *See, e.g.*, Hillsboro, Or., Admin. Rule 009.44.030A(1) (restricting camping near schools, sensitive habitat, freeway on-ramps, construction sites, among others), https://www.hillsboro-oregon.gov/home/showpublisheddocument/29535/638215733589870000); Portland, Or., Ordinance No. 191311 Ex. A (2023), https://www.portland.gov/sites/default/files/council-documents/2023/exhibit-a_2.pdf (restricting camping near schools, environmental overlay zones, and certain "high-crash" rights-of-way).

[6] *See, e.g.*, Molalla, Or., Ordinance No. 2023-04 (2023), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.cityofmolalla.com/sites/default/files/fileattachments/city_council/page/7474/7b1_ord._no._2023-04_regulating_and_prohibiting_public_camping.pdf, (restricting use of fires in parks and publicly owned property); Wilsonville, Or., Ordinance No. 879 §10.740 (2023), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wilsonvilleparksandrec.com/sites/default/files/fileattachments/ordinance/126502/ordinance_no._879.pdf, (restricting the dumping of gray water and black water, unleashed animals, fires, and digging or excavation).

[7] *See, e.g.*, City of West Linn, Or., "Required Camping Code Changes," https://westlinnoregon.gov/citycouncil/required-camping-code-changes ("Illegal behaviors remain punishable by law, as they are for anyone who commits a crime.").

**Page 4 –  AMICUS LEAGUE OF OREGON CITIES' BRIEF IN SUPPORT OF
              DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### B. The proliferation of homeless camps poses a monumental challenge for public resources in Oregon.

The impact of the massive increase of people sleeping in public areas is deeply felt. For example, Portland, Oregon has seen a dramatic increase in fires in and around unhoused encampments.[8] More than half of fires in Portland now start in or near homeless camps—at least 2,048 in 2021—putting a strain on the city's Fire & Rescue Bureau, which responds to five or six of these fires every night.[9] A local district in Oregon reports that it similarly spent more than $150,000 to repair a levee that homeless campers damaged, creating a serious flood risk.

In recent years, other Oregon cities have similarly faced overwhelming clean-up efforts related to homeless campsites:



(Homeless campsite in Eugene, Oregon after campers vacated)[10]

---

[8] Natalie O'Neill, *Blazes That Begin in Homeless Camps Now Account for Nearly Half the Fires in Portland*, Willamette Week (Nov. 2, 2022), https://www.wweek.com/news/2022/11/02/blazes-that-begin-in-homeless-camps-now-account-for-nearly-half-the-fires-in-portland/.

[9] *Id.*

[10] Tiffany Eckert, *Eugene's Camp 99 Officially Closes, Homeless Campers Disperse*, KLCC (Jan. 16, 2019), https://www.klcc.org/post/eugenes-camp-99-officially-closes-homeless-campers-disperse

Page 5 –   AMICUS LEAGUE OF OREGON CITIES' BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT



(Homeless campsite in Warrenton, Oregon (population 6,393) after campers vacated)[11]



(Homeless campsite in Bend, Oregon)[12]

---

[11] *QuickFacts: Warrenton, Oregon*, United States Census Bureau, https://www.census.gov/quickfacts/fact/table/warrentoncityoregon/RTN131217, (last visited Nov. 23, 2022).

[12] Anna Kaminski, *Bend to Clear Homeless Encampments on Hunnell Road in July*, The Bend Bulletin (June 21, 2023), https://www.bendbulletin.com/localstate/bend-to-clear-homeless-encampments-on-hunnell-road-in-july/article_a8937db8-1056-11ee-bec8-3742962ae077.html

**Page 6 –    AMICUS LEAGUE OF OREGON CITIES' BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The use of tents and other structures in public campsites poses a unique problem because such structures put an increased strain on public spaces. For example, the City of Portland recently settled a lawsuit that alleged tent encampments and accompanying debris on sidewalks violated the Americans with Disabilities Act.[13] The City of Bend recently removed a two-story, wheeled structure that a homeless individual erected in a public right-of-way.[14]

The consequences extend beyond the debris and damage that encampments leave behind—cities also report increases in crime both by and against the unsheltered homeless. The City of Portland receives thousands of citizen complaints each week alleging that persons are using drugs, engaging in domestic violence, and leaving used tampons and feces on the ground.[15] One removal effort exposed more than 150 stolen cars in just one Portland camp.[16] In Bend, police have responded to 1,527 calls from a single campsite in just the last 12 months.[17]

---

[13] Claire Rush, *Portland, Oregon, to Clear Sidewalk Tents to Settle Suit with People with Disabilities*, Associated Press (June 2, 2023), https://apnews.com/article/portland-ada-lawsuit-homeless-tents-sidewalks-aee2d079440d5f9427a18d9e4771d92a.

[14] Barney Lerten, *City of Bend Dismantles, Removes Two-Story Structure Homeless Man Built on NE Mary Rose Place*, KTVZ.com (June 6, 2023), https://ktvz.com/news/bend/2023/06/06/city-of-bend-dismantles-removes-two-story-structure-homeless-man-built-on-ne-mary-rose-place/#:~:text=BEND%2C%20Ore.,code%20violations%2C%20city%20officials%20said

[15] Blair Best, *'We're Done With Portland': Some Residents Move Away Over What They Say Is The City's Lack Of Response To Homeless Camps*, KGW.com (Aug. 29, 2022), https://www.kgw.com/article/news/local/homeless/portland-residents-move-washington-over-lack-response-homeless-camps/283-6eea7e53-4a56-4296-97cc-f8fe106818c7.

[16] Angelica Thornton, *Officials Break Up Homeless Camp, Pull Out 150 Stolen Cars, Tons of Trash, Live Pigs*, KATU Staff (Oct. 19, 2022), https://komonews.com/news/nation-world/city-breaks-up-homeless-camp-pulls-out-150-stolen-cars-tons-of-trash-live-pigs-big-four-corners-natural-area-portland-oregon-housing-crisis-damage-neighbor-george-donnerberg-park-and-rec-environmental-impact.

[17] KTVZ News, *'The City Must Act': Bend Plans to Clear, Close Hunnell Road Homeless Encampment Due to Health, Safety Issues*, KTVZ.com (June 21, 2023), https://ktvz.com/news/2023/06/21/the-city-must-act-bend-plans-to-clear-close-hunnell-road-homeless-encampment-due-to-health-safety-issues.

Page 7 –   **AMICUS LEAGUE OF OREGON CITIES' BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Smaller communities face similar challenges. In Newport, Oregon—a town of 10,500 people—police responded to nearly 1,000 trespass complaints in 2021, more than 80 percent of which related to homeless persons. In one Oregon special district, a homeless encampment grew around a pumping station over the course of several months. The camp became a chop shop, processing stolen catalytic converters. District staff heard gun shots more than once while trying to access the pump station. They required a police escort to access the pumping station during a major rainstorm that created a flood risk.

Homeless encampments are not safe for anyone, including those who live in them. Portland has seen at least 82 homicides in 2022, and 18 percent of the victims were unhoused.[18] Statewide 161 unhoused individuals died due to unintended injuries, while 21 were killed in homicides in 2022.[19]

### C. Responding to unchecked campsites diverts resources from direct efforts to assist the homeless.

Local governments in Oregon have stepped up to help address the homelessness crisis. Last fall, a task force of 25 Oregon mayors called for an investment of $123 million annually because cities in Oregon continue to lack the resources necessary to combat the statewide homelessness crisis.[20] In March, the legislature passed and Governor Kotek signed a $200

---

[18] Nicole Hayden, *Deaths on the Streets: Homeless Homicides in Portland Eclipse 2021*, The Oregonian (Oct. 22, 2022), https://www.oregonlive.com/portland/2022/10/deaths-on-the-streets-homeless-homicides-in-portland-eclipse-2021.html.

[19] Oregon Health Authority Center for Health Statistics, *Oregon Preliminary Death Data* (May 1, 2023), https://www.oregon.gov/oha/ph/birthdeathcertificates/vitalstatistics/death/pages/index.aspx; https://visual-data.dhsoha.state.or.us/t/OHA/views/Oregonpreliminarydomicileunknowndeaths/Dashboard?%3AisGuestRedirectFromVizportal=y&%3Aembed=y;

[20] Miranda Cyr, *Oregon Mayors Organize Homeless Outreach Plan, Ask State for Millions in Assistance*, The Register Guard (Oct. 16, 2022),

Page 8 –   AMICUS LEAGUE OF OREGON CITIES' BRIEF IN SUPPORT OF
            DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

million package to combat homelessness, which includes additional funding for shelter beds. The City of Portland alone allocated $85 million for homeless housing and services in 2022-23, and the tri-county metro area passed a tax measure in 2020 that is expected to raise $2.5 billion for homelessness services by 2030.[21]  Cities across the state have engaged in similar efforts to increase services and shelter options for individuals experiencing homelessness.[22]

Local governments in Oregon have not been idle in the face of the growing crisis of homelessness.  However, city budgets are stretched thin and local governments are generally prohibited by state law from carrying a deficit.  They can devote public resources to short-term responses to the health and safety concerns posed by unchecked public campsites.  But cities' limited resources would be better spent focusing on long-term solutions to homelessness and protecting the usability of public spaces for all residents.

## CONCLUSION

For the reasons stated in Medford's motion for summary judgment and this *amicus curiae* brief, this Court should grant Medford's motion for summary judgment.

DATED:  June 30, 2023.	MARKOWITZ HERBOLD PC

*s/Anit Jindal*
Anit Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
*Attorneys for Amicus Curiae League of Oregon Cities*

2008912.4

---

https://www.registerguard.com/story/news/2022/10/16/oregon-mayors-state-funding-aid-homeless-crisis/69566530007/.

[21] Angela Hart, *'Not Safe Anymore': Portland Confronts the Limits of its Support for Homeless Services*, Los Angeles Times (June 21, 2022), https://www.latimes.com/world-nation/story/2022-06-21/portland-liberal-support-lags-homeless-services-drugs.

[22] *Shelter Resources*, League of Oregon Cities, https://www.orcities.org/resources/reference/homeless-solutions/shelter-resources (describing local efforts to provide shelter).

Page 9 –	AMICUS LEAGUE OF OREGON CITIES' BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT